The Toledo, St. Louis and Kansas City Railroad Company *v.* Trimble.

Filed Nov. 28, 1893.

◆

No. 767.

## THE TOLEDO, ST. LOUIS AND KANSAS CITY RAILROAD COMPANY *v.* TRIMBLE.

MASTER AND SERVANT.—*Employing a Minor.*—*Rules Governing Master's Liability.*—*Coemploye, Incompetency of.*—*Injury by.*—*Railroad.*—If one knowingly hire a minor and require him to perform dangerous service, in opposition to the parent's will, he will be liable to the parent, if injury befall such minor while engaged in such service. In such case it is not a question of negligence that gives rise to the liability, but the wrong consists in opposing the will of the parent. But where such employment is simply without the consent of the parent, not against his express will, the question of liability is governed by the general rules applicable to such relation, viz.: Instructing servant if unexperienced, providing usually safe machinery, tools, and place to work, and competent and skillful fellow-servants; and in case of an injury resulting from the incompetency of a fellow-servant, damages can not be recovered where it is not affirmatively shown that the injured party had no knowledge of such incompetency.

From the Clinton Circuit Court.

*S. O. Bayless* and *C. G. Guenther*, for appellant.
*M. Bristow* and *J. T. Hockman*, for appellee.

LOTZ, J.—The appellee's minor son was killed while in the employ of the appellant as a night switchman. This action was brought to recover damages for the loss of his services during his minority. The complaint proceeded upon the theory that the son had been employed by the appellant in a dangerous and hazardous service, without the consent of the appellee; that he was inexperienced, and appellant failed to give him proper instructions, and that the son's death resulted from the unskillful and negligent conduct of the engineer in charge of the engine. There was a trial by jury and a special verdict returned.

Several errors are assigned, but the only ones discussed by appellant are that the court erred in overruling the motion for judgment in favor of the appellant on the special verdict and in overruling the motion for a new trial. The special verdict is as follows:

"First. We find that the defendant is a corporation duly organized under the laws of the State of Indiana, and as such corporation is now, and has been, for more than two years last past, conducting and managing a general railroad business between the cities of Toledo, Ohio, and St. Louis, Missouri, and controlling and operating locomotive engines, cars, and other property upon the defendant's said railroad.

"Second. That the railroad track of defendant passes through the county of Clinton and State of Indiana.

"Third. That as a part of said railway of defendant and its appurtenances thereunto belonging, the defendant has maintained for more than two years last past, in and adjacent to the city of Frankfort, in said Clinton

county, a large yard covered with switches (side tracks), which are used by the defendant for standing cars and general switching purposes, upon which tracks trains are made up by the defendant preparatory to their being transported over the defendant's said railroad, both east and west, from said yard.

"Fourth. That at and in said yard, and for the purpose of conducting the business thereof, the defendant employed locomotive engines propelled by steam, and crews of employes, one of which crews, for more than two years last past, has attended to such duties of switching from the hour of six o'clock in the evening until six o'clock the next morning, at which time another crew takes charge of such switching work.

"Fifth. That the said city of Frankfort is, and has been for more than two years last past, a division point in the defendant's said railway system, and at the aforesaid yards all freight trains are rearranged before being transported over the defendant's said railway, both east and west from said Frankfort and from said yards.

"Sixth. That to do said service of said night switching in said yard, it required the services of the said night crew the entire night, and until six o'clock of the following morning, to get the said freight trains ready to move.

"Seventh. That the work of switching during the night time, and the making up of trains during that time, was, from April 2d to May 7th, 1891, dangerous to the persons of the said night crew, and required skilled and experienced persons to operate the locomotives, and shift and switch the cars in said yard.

"Eighth. That from April 2d to May 7th, 1891, in said yard of the defendant, and at the switches and side tracks in said yard adjacent to said defendant's railroad track, no lights were kept to aid said night crew in their said work of switching, except the small lanterns carried

by the employes engaged in said work and the headlight of the switching engine.

"Ninth. That said work of night switching during said time last aforesaid was also hazardous and dangerous in this—that by reason of the short runs made each time in changing the situation of the cars, the sudden starting and stopping of the locomotive and cars attached, the jars caused by the coming together, the constant coupling and uncoupling of the cars, requiring a switchman each time to go between the cars, the necessity of switchmen having to ride upon the tops of the cars much of the time during switching, all of which rendered the employment and duties of night switchmen particularly. hazardous and dangerous, and especially so to employes of immature years and inexperience in this class of labor.

"Tenth. That on April 2d, 1891, the defendant, without the consent of the plaintiff, employed one Charles C. Trimble, a son of the plaintiff, to serve in said yard of defendant, in the capacity of night switchman; that at the time of said employment of plaintiff's son by defendant, said Charles entered the service of said defendant and continued in said service until the day of his death, to wit: May 7th, 1891.

"Eleventh. That said Charles, pursuant to the terms of said employment, went on duty as such night switchman, with said night crew, at six o'clock in the evening of each day, served during the entire night at such work until six o'clock the next morning, except the morning of May 7th, 1891. That under said employment, and as a part of the duty of said Charles, he did, during said employment in the night time, couple and uncouple cars, open and close switches, and was compelled, in the proper discharge of his duties at such times, to ride upon the tops of the cars; that during the time of such employment, and while said Charles was on duty at said

work, said cars were shifted and changed from place to place by means of a locomotive engine propelled by steam.

"Twelfth. That said Charles, at the time of said employment by defendant, was nineteen years of age, had never served in the capacity of switchman, and was wholly inexperienced to do such duties incumbent upon him in such service, with safety to his person. That at the time said Charles entered the service of the defendant as aforesaid, the defendant had knowledge of his youth and inexperience to perform the duties attending the service of night switchman, but at the time of said employment the defendant failed to instruct said Charles of the dangers attending such service, and failed to give him the necessary instructions as to how to avoid the dangers attending the same.

"Thirteenth. That on the evening of May 6th, 1891, said Charles went on duty in said service as switchman, to serve until six o'clock of the morning of the 7th day of May. That the night switching crew on duty on said night consisted of George Beech, engineer; Alfred Allison, fireman; George V. Keefer and said Charles C. Trimble, switchmen. That the switching locomotive engine used by said crew on said night, and until the following morning at five o'clock, was known as engine No. 94. This engine was at said time owned and operated by the defendant. It was formerly a narrow gauge engine, and had been widened to standard gauge prior to said night. That said engine was of low build, the cylinder cock being about three to five inches above the tops of the rails.

"Fourteenth. That about five o'clock of the morning of said May 7th, it became necessary in the line of duty for said crew to move five freight cars from said yard of defendant to the "house switch" of defendant in said

city; that said switching engine, with said engineer Beech in charge, was fronting to the east, and pushed said cars from the yard east, toward the said house switch.

"Fifteenth. That when said engine and cars were moving toward said house switch, said Charles and the associate switchman were riding upon the top of the east end of the fifth freight car. When the front car was within about (200) two hundred yards of the house switch, the engineer, Beech, was signaled to slacken up for the switch; at or about the time said signal was given to the engineer, said Charles, who was standing about the center of the last or fifth car, started to go to the east end of the car, where the ladder was, for the purpose of going down to throw the house switch; that when he was near the end of said car, the engineer unnecessarily reversed said engine and caused said engine and cars to stop with such suddenness that said Charles, by reason thereof, was thrown forward over the end of the car upon the track below, with his head and upper part of the body resting on the south side of the south rail of said track, and with his legs over and upon said south rail of said track; that at the time said Charles fell as aforesaid, said engine and cars were moving toward where said Charles was lying; that said Charles was caught under the wheels of said car and one leg crushed below the knee, while the other foot was also crushed; that all of said cars, including the engine, passed over said Charles.

"Sixteenth. That when said Charles fell, and was lying with his head and upper part of his body at nearly right angles with said track, he was on the engineer's or right side of the track, and could have been seen by said engineer; that said engineer carelessly permitted said engine and cylinder cock to pass over and crush his

body, which could have been avoided had the said Beech been attending to his duty.

"Seventeenth. That said Charles died from the effects of the injuries received as aforesaid, on the 7th day of May, 1891, at 12:30 o'clock P. M.

"Eighteenth. We further find that said Charles was in the employment of the defendant at the time he received said injuries, was in the line of his duty as assigned him by the defendant, and that in assisting to transfer said freight cars he was doing the same under the direction of the defendant.

"Nineteenth. That the plaintiff was never present about the defendant's track or yard when the said Charles was on duty as night switchman.

"Twentieth. We further find that the death of said Charles was caused by the cars and cylinder cock of the engine of defendant passing over his body, mangling and bruising the same.

"Twenty-first. We further find that said Beech was not regularly employed by the defendant as an engineer; neither was he sufficiently skilled or competent to act in the capacity of engineer, or to have the management of said locomotive engine, all of which facts of incompetency and unskillfulness were known to the defendant at the time of the accident, and prior thereto; that said Beech was, from April 2 to May 7, 1891, upon the pay-roll of the defendant as "day hostler," and not as an engineer, and at the time of said accident, and when and before said Beech was assigned to duty upon said switching engine No. 94, the defendant had notice that the said Beech was an incompetent and unskilled engineer.

"Twenty-second. We further find that engineer Beech was well acquainted and familiar with the switches and said tracks of the defendant in and adjacent to the city of Frankfort, in said county, on the 17th day of May,

1891. We also find that it was unnecessary, in the switching of said five cars and placing the same in the house switch, that said engineer Beech should check said engine and cars so suddenly at the time said Charles was thrown from the car as aforesaid; that when said engineer Beech received said signal to stop said engine and cars, the front freight car was 230 yards west of said house switch, and said engine and cars could have been stopped before reaching said switch without any sudden checking of said engine and cars. We further find that at the time said Beech checked said engine and cars for entering said house switch, said Beech did not sound the whistle of said engine nor give any warning to said Charles.

"Twenty-third. We further find that the death of said Charles, as aforesaid, was caused through the incompetency and unskillfulness of said engineer Beech, and that the defendant showed a want of care and diligence in putting said Beech in charge of said engine No. 94 on the night of May the 6th, and on the morning of May 7, 1891, for the purpose of doing the switching as aforesaid.

"Twenty-fourth. We further find that said Charles C. Trimble was nineteen years old on the first day of January, 1891, and that at the time of his death as aforesaid, was nineteen years, four months and six days old.

"Twenty-fifth. That said Charles, at the time of said employment and at the time of his death, was living in plaintiff's family as a member thereof, and had never been emancipated by plaintiff.

"Twenty-sixth. That said Charles, at the time of said employment, and of the accident aforesaid, and for seven years prior thereto, was able-bodied and capable of earning and did earn wages, and was, at the time of said accident, earning two dollars ($2.00) per day.

"Twenty-seventh. We further find that the value of the services of said Charles, from the time of his death to the time when the said Charles would have attained the age of twenty-one years, less the cost of his maintenance during said term, is the sum of eleven hundred dollars.

"If, upon the foregoing fact, the law be with the plaintiff, we find for the plaintiff and assess his damages at eight hundred dollars. If, upon the foregoing facts, the law be with the defendant, we find for the defendant."

Several causes of action are alleged in the complaint:

First. That the minor son was employed and set to work in a dangerous service, without appellee's consent.

Second. That the son was inexperienced, and that the appellant failed to give him proper instructions so that he might avoid injury.

Third. That the appellant knowingly employed an unskillful and incompetent engineer, which fact was unknown to the deceased.

If either one of these causes be found by the special verdict, the appellee is entitled to a recovery. The father is entitled to the services and society of his child until he reaches his majority. Whoever deprives the father of the child's services against his will must respond in damages. *Rogers* v. *Smith*, 17 Ind. 323.

If one knowingly hire a minor and require him to perform dangerous service in opposition to the parent's will, he will be liable to the parent if injury befall such minor while engaged in such service. In such a case it is not a question of negligence that gives rise to the liability, but the wrong consists in opposing the will of the parent. *Grand Rapids, etc., R. R. Co.* v. *Showers*, 71 Ind. 451 (454); *Ft. Wayne, etc., R. W. Co.* v. *Beyerle*, 110 Ind. 100.

The mere fact that a minor is employed without the

consent of the parent will not make the employer liable in case injury befall him.   There is a difference between the want of consent and active opposition to the parent's will.   In the last instance, the injury proximately results from opposing the parent's will, while in the other instance the employment itself may not be wrongful, and if injury befall the minor, it can not be said that the injury proximately results from the employment.   In a special finding or verdict, every fact necessary to the plaintiff's recovery must be found, or the judgment must be for the defendant.   The want of consent may give rise to the presumption that the employment was against the will of the parent, but such presumption is not conclusive, nor is it an ultimate fact upon which the right of recovery rests.   Something more must concur to make the employer liable.   He must have failed to instruct him if he was inexperienced, or failed in the discharge of some of the master's duties, such as providing him with reasonably safe machinery, tools, places to work and competent, and skillful fellow-servants.   *Pennsylvania Co.* v. *Long*, 94 Ind. 250 (254).

The special verdict here finds that the deceased was employed without the consent of the appellee, but does not show that the employment was in opposition to his expressed will.   In this respect it is insufficient to support a recovery.

As to the second cause, the finding is that the deceased was inexperienced, and that the appellant failed to instruct him, but there is the further finding that the deceased was more than nineteen years of age, and had worked as night switchman for more than a month at the time he met his death.

The services which he was required to perform were specially hazardous, and their dangers were as well known to him as any one.   Minors are ordinarily held

to assume the risks of the employment in which they are engaged and which are open and obvious to them. Buswell Personal Injuries, section 204; *Levey* v. *Bigelow*, 6 Ind. App. 677, 34 N. E. Rep. 128, and cases there cited.

As to the third cause, the finding is that the appellant directed Beech to perform the duties of engineer, knowing that he was incompetent; but there is no finding that the deceased did not know of his incompetency. If he knew of his incompetency and entered or continued in the service with such knowledge, he assumed the risk attending such incompetency. In order to sustain an action for an injury resulting from the negligence or incompetency of a coemploye, the plaintiff must prove that at the time the injury occurred he had, or that his decedent had, no knowledge of the incompetency or negligence of the fellow-servant, or facts from which the want of such knowledge may be inferred. *Lake Shore, etc., R. W. Co.* v. *Stupak*, 108 Ind. 1 (4).

The want of such knowledge must be affirmatively shown. There are no facts found by the special verdict from which such want of knowledge affirmatively appears. There is a marked difference with reference to the duties of the court in dealing with a special and a general verdict in actions for negligence. Negligence being usually a mixed question of law and fact, a general verdict may cover questions of both law and fact. Not so with a special verdict. It is the duty of the court to declare the law on a special verdict, and in such cases the jury have no concern with the law. The special verdict above set out fails to find sufficient facts upon which the judgment can find support.

Judgment reversed, at cost of appellee, with instructions to sustain the motion for a new trial.

Filed Nov. 28, 1893.