## JOHN W. SEGLINSKI *v.* BALTIMORE COPPER SMELTING & ROLLING COMPANY.

*Injury to Infant Employee—Assignment to Dangerous Work— Action By Parent.*

If an infant is employed, with his parent's consent, at work of a non-dangerous character, and thereafter the employer, without the parent's consent, transfers the infant to dangerous work, the parent may recover against the employer for loss of the infant's services as the result of an injury to the latter while engaged in such work, without regard to whether the injury is caused by the employer's negligence, the infant's contributory negligence, or the act of a fellow servant.          pp. 543-547

The parent's consent to the infant's employment, which will exempt the employer from liability to the parent for the latter's loss of the infant's services, may be either express or implied from his conduct, and it is immaterial that such consent is wanting at the commencement of the employment, if it is subsequently given, either expressly or impliedly, during the time of employment and before any injury to the infant occurs.

p. 547

*Decided January 13th, 1926.*

Appeal from the Baltimore City Court (DUKE BOND, J.).

Action by John W. Seglinski against the Baltimore Copper Smelting and Rolling Company. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*William Curran,* with whom were *Curran & Leach* on the brief, for the appellant.

*Mason P. Morfit,* with whom were *Sappington & Morfit* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment for the defendant, the appellee in this court, in an action brought against it by the appellant for the loss of services of his son, who was injured while in its employment.

As stated in the declaration, the plaintiff sued the defendant:

"For that at the time of the happening of the injuries hereinafter complained of and before and afterwards, the defendant, the Baltimore Copper Smelting and Rolling Company, was carrying on the business of copper manufacturing, in the City of Baltimore and State of Maryland; that on or about the 26th day of April, 1924, the defendant employed one Joseph Seglinski, the infant son of the plaintiff, as a shearman's helper; that at the time of said employment the said Joseph Seglinski, was a minor seventeen years of age, which fact was known to the defendant; that the said employment was with the written consent of the plaintiff; that said employment was a non-dangerous occupation; that later in the afternoon of the said 26th day of April, 1924, the said Joseph Seglinski was transferred and placed at work as a roller's assistant; that thereafter while so employed and while working in the plant mentioned hereinabove on the 2nd day of May, 1924, the defendant by its agents and servants placed the said Joseph Seglinski to work as a shearman on a shear machine; a dangerous occupation; that while so working as a shearman on said shear machine, the said Joseph Seglinski, on the 2nd day of May, 1924, aforesaid, had the distal phalanges of all four fingers of his right hand cut off by being caught under the shears of said shear machine at which he was then working; that said Joseph Seglinski has thereby been permanently disabled and incapacitated from earning his livelihood at any of the mechanical trades; that the said transfer of said Joseph Seglinski to the work of shearman was without the knowledge or consent of John W. Seglinski, the plaintiff herein.

"That said injuries to the said Joseph Seglinski, the minor son of the plaintiff, John W. Seglinski, were the proximate result of the wrongful act of the defendant, its agents and servants in the premises in placing and employing said Joseph Seglinski to perform said dangerous work on said dangerous machinery, without the knowledge or consent of his father, the plaintiff.

"That as a result of said injuries to said Joseph Seglinski, caused by the wrongful act of the defendant as aforesaid, the plaintiff has permanently lost the services of his said minor child."

A demurrer was interposed to the declaration, and upon its being sustained without leave to amend, a judgment for defendant's costs was entered.

The question arising under the demurrer, and presented by this appeal, is whether an employer is liable to the father for the loss of his son's services, caused by injuries received in his employment, where the employer, with the consent of the father, employs his son, a boy not more than seventeen years of age, knowing him to be a minor, to do work not of a dangerous character, and afterwards, without the consent of the father, transfers him to dangerous work, and the son is injured while engaged in such work, not due to any negligence of the employer, to the extent of rendering him unable to perform the services to which his father is entitled.

In 20 *R. C. L.* 620, it is said: "It is the general rule that a person who employs an infant without his parent's consent, and requires him to do dangerous work in the performance of which the child is injured, commits an actionable wrong, for which the employer is liable, although there is no evidence of negligence on his part. The wrong inherent in the employment makes proof of a subsequent wrong, as by negligence, unnecessary. The loss of the service is the gist of the action. Knowledge of the minority of a child, employed without the parent's consent, appears to be essential to the maintenance of the action. But this may be

shown by circumstantial evidence. The plaintiff is not re-
quired, however, to prove that the master knew that he
objected to the employment. One hires a minor at his peril;
and it is his duty to know that the father is willing before
he hires him, especially if the employment is dangerous."

The author in support of the principles enunciated, cites
the following cases: *Louisville etc. R. Co. v. Willis,* 83 Ky.
57; *Haynie v. North Carolina Electric Power Co.,* 157 N. C.
503, 37 L. R. A. (N. S.) 580; *Gulf etc. R. Co. v. Redeker,*
67 Tex. 190; *Texas etc. R. Co. v. Brick,* 83 Tex. 526;
*Hendrickson v. Louisville etc. R. Co.,* 137 Ky. 562, 30 L. R.
A. (N. S.) 311.

In *Louisville etc. R. Co. v. Willis, supra,* the court said:
"The duty of the father to educate and maintain the son
entitled the former (the father) to the son's services, and
placed him in the attitude of a master to him, or created
the relation of master and servant; * * *. If one en-
gages the servant of another in an obviously dangerous busi-
ness, he renders himself responsible for any injury the serv-
ant may sustain while so engaged, and which can rationally
be attributed to the undertaking; and this is so, even if the
injury results immediately from the neglect or unskillful-
ness of the servant, owing to the fact that the person, by so
illegally interfering, assumes all the risk incident to the
services."

In *Hendrickson v. Louisville etc. R. Co., supra,* it was
held that the father may recover damages for injuries to
his minor son because of his employment, without his knowl-
edge, as brakeman by a railroad company, which knows of
his minority, and the fact that the son assumes the risk of
his employment, so that he could not recover for his own
injury, is immaterial. The notes to this case in 30 L. R. A.,
N. S. 311, cite many other cases in support of the above
stated principles.

In *Texas etc. R. Co. v. Brick,* 83 Tex. 526, the court said
that the parent's "ground of complaint is, that the employer
has engaged the son in a dangerous occupation, where, by

reason of the dangers attending the business either naturally arising from it or from the negligence of employees, he has lost the son's services; and in our opinion he is entitled to recover for any loss resulting from such dangers, without reference to the question whether the son has contributed to such injury or not, provided the loss has resulted from the perils of the occupation. The wrong to him consists in the unauthorized employment, and he is entitled to compensation for any loss which has resulted from that wrong."

In *Labatt's Master and Servant* (2d Ed.), vol. 7, sec. 2641, it is said: "The doctrine of liability for employment of a minor in dangerous work without the parent's consent is of comparatively recent origin and development. * * *. It is now settled almost without dissent: 'One who employs a minor, knowing him to be such, in a dangerous business, without the father's consent, becomes liable to compensate the father for any loss of the son's services during minority, which may result from an injury suffered in that business.' The important feature of this doctrine is that if the injury proximately results from the unlawful employment, the employer's freedom from negligence does not absolve him from liability, and all questions of assumption of risk, contributory negligence of the minor, of negligence of a fellow servant, are excluded from consideration."

See also *Union Pac. R. Co. v. Fort,* 17 Wall. 553; *Marbury Lumber Co. v. Westbrook,* 121 Ala. 179; *Braswell v. Garfield Cotton Oil Mill Co.,* 7 Ga. App. 167; *Hillsboro Cotton Mills v. King,* 51 Tex. Civ. App. 518; *Harris v. Union Cotton Mills,* 23 Ga. App. 299.

The only case which we have been able to find at variance with the above cited cases is *Williams v. Southern R. Co.,* 121 N. C. 512, where the court held that, as the loss of the services caused by the injury of the child employed without the parent's consent was caused by an injury which was not the fault of the defendant, it could not be held liable for such loss. The fact that this is the only case not in accord

with the cases cited above is also mentioned in note, in 30 L. R. A. (N. S.), to *Hendrickson v. Louisville etc. Co., supra,* and the only comment there made was that "the opinion is very short," with no "discussion of the question."

It is also said in 20 *R. C. L.* 621, that "where the parent consents to the employment of his infant child to do a certain kind of work, the master is liable to the parent for injuries sustained by the infant in the performance of another and more dangerous kind of work which is required by the master."

In *Union Pac. R. Co. v. Fort, supra,* the court upheld the liability of a master to a parent where it appeared that an infant sixteen years of age was employed, with the consent of his parents, as a helper at a moulding machine, and without the parents' consent he was directed to adjust belts on dangerous machinery and was injured while attempting to do so. The court said: "To work as a helper at a moulding machine, or a common workman on the floor of the shop, is a very different thing from ascending a ladder resting on a shaft, to adjust displaced machinery, when the shaft was revolving at the rate of one hundred and seventy-five to two hundred revolutions per minute. The father had the right to presume when he made the contract of service that the company would not expose his son to such peril. Indeed, it is not possible to conceive that the contract would have been made at all if the father had supposed that his son would have been ordered to do so hazardous a thing."

In *Marbury Lumber Co. v. Westbrook, supra,* where a parent consented to the employment of a boy under fourteen years of age to carry stocker sticks, it was held that the master was liable to the parent for injury sustained by the boy while operating a logging carriage in following the master's directions. Where a parent consented to the employment of his infant child for the purpose of sacking cottonseed hulls, and without the parent's consent the child was directed to oiling dangerous machinery, and was injured

while attempting to do so, the employer was held liable. *Braswell v. Garfield Cotton Oil Mill Co., supra.*

It seems that in Indiana alone a distinction is apparently made between an employment without the parent's consent and an employment against and in opposition to the parent's wishes (*Toledo etc. R. Co. v. Trimble,* 8 Ind. App. 333), though in Indiana it is not the negligence of the defendant that gives rise to the liability, but the wrong done in opposing the will of the parent.

The great weight of authority undoubtedly is, that where the employment is *without the consent* of the parent, the employer is liable to the parent for loss of services of his infant child caused by an injury to him while engaged in dangerous work for which the undertaking is responsible; and this is true though the injury be caused by the negligence of the defendant or by the infant's own contributory negligence, or an act of a fellow servant.

It may be said, however, that the consent of the parent to such employment may be either express or implied from his conduct, and it is immaterial that the consent of the parent is wanting at the commencing of the employment, if such consent is subsequently given, either express or implied, during the time of the employment and before any injury to the infant occurs. *Warrior Mfg. Co. v. Jones,* 155 Ala. 379.

The question of the defendant's liability in this case is presented by the demurrer to the declaration, in which it is said that the employment to which the father gave his consent was not a dangerous employment, while the work to which he was subsequently transferred, without the consent of the father, was dangerous. In considering the demurrer, we must assume that the work to which the boy was first assigned was not dangerous, and that his employment thereat was with the consent of the father, and, second, that the work to which he was subsequently transferred was dangerous, and that the father's consent thereto was never obtained. These facts, however, upon a trial of the case,

are questions for the jury to consider and determine when properly instructed by the court.

Upon an application of the principles above stated, we do not see how we can escape the conclusion that the declaration states a good cause of action, and that the demurrer should have been overruled. We will, therefore, reverse the judgment appealed from and award a new trial.

> *Judgment reversed, and new trial awarded, with costs to the appellant.*