571 A.2d 850

**Lucille MICHAELS, et al.**

**v.**

**Carol Joann NEMETHVARGO.**

**No. 1007, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

March 30, 1990.

Ellen Luff, Gambrills (Gill Cochran, Annapolis, on the brief), for appellants.

No brief or appearance by appellee's counsel.

Argued before BISHOP, ALPERT and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

The facts before us set out a cause of action for parents who have lost the services of their minor child; the parents also claim a loss of companionship and society. We agree with them that there is a valid claim for the loss of services and necessary expenses, but will leave it to the Legislature to provide parents with a cause of action for the loss of their minor child's society and companionship, if it determines this is advisable.

This appeal arose from a decision of the Circuit Court for Anne Arundel County dismissing the complaint of Lucille and John Michaels, and their 17–year–old son, Anthony (Tony) Michaels. The Michaelses sued Carol Nemethvargo for the loss of Tony's services and companionship as a result of his current imprisonment. In the spring of 1986, Mrs. Nemethvargo employed Tony and three other young men to kill her husband. In return, Mrs. Nemethvargo promised to pay Tony $6,000 for murdering her husband. The plan to kill Mr. Nemethvargo failed and Tony was ultimately tried as an adult and found guilty of attempted first degree murder. He was sentenced to six years imprisonment, while Mrs. Nemethvargo was placed on probation for her role in the plot.

The Michaelses filed suit on July 10, 1987. A summons was issued on July 14, 1987 and served on Mrs. Nemethvargo on September 15, 1987, more than 60 days after the summons was issued. A Motion for Default Judgment was filed on December 11, 1987, after which an Order for Default was filed on December 30, 1987, pursuant to Rule 2–613(a). Mrs. Nemethvargo was sent notice of the default on January 18, 1988. On April 5, 1988, she appeared in court for a damages hearing in the present suit. Damages, however, were never assessed. The following day, the court enjoined the buyers of Mrs. Nemethvargo's house from paying the money directly to her. The order required the proceeds be placed into an escrow account until this suit was resolved.

On May 13, 1988, Mrs. Nemethvargo filed a Motion to Revise Judgment,[1] alleging that the complaint was served three days after the summons had expired. Despite the title of the motion, there was no default judgment to revise, only an order of default. The Michaelses filed an answer to this motion. On July 5, 1988, the trial court struck the order of default and ordered the dissolution of the injunction.

Nearly nine months later, on March 20, 1989, Mrs. Nemethvargo filed a Motion to Dismiss Complaint and Memorandum, alleging that the Michaelses had no cause of action because her contract with Tony was illegal. At the April 13, 1989 hearing on the motion to dismiss, she also argued that the Worker's Compensation Act invalidated any common law action the Michaelses might have had.[2] The trial judge ruled in favor of Mrs. Nemethvargo and dismissed the case. This appeal followed.

On appeal, the Michaelses complain:

— The trial court erred in striking the default judgment against appellee where the appellee did not file a motion to revise until 38 days after she had personally appeared in court and over 90 days after judgment was enrolled where she offered no reason for the delay and made no showing whatsoever of having acted with due diligence.

---

1. The court record indicates that the certificate of service was dated May 5, 1988, but the document was not filed until May 13, 1988. Mrs. Nemethvargo did not file a brief in this appeal; (her counsel withdrew as he had received no payment for proposed work on this appeal) consequently, there is no explanation for the eight-day gap between the date the Motion to Revise was allegedly sent and the date it was received and filed. The Michaelses' counsel swore in an affidavit that, despite the May 5th date on the certificate of service, he did not receive a copy of the Motion to Revise Judgment until May 13, 1988.

2. We need not and will not address the arguments in appellants' brief which deal with the illegality of the minor appellant's actions as that is not the basis for our holding. Nor will we deal with worker's compensation contentions as they would be an issue in defense of the tort action dealing with Tony's claim in tort.

— Appellants, parents of a minor child, have a cause of action where they were deprived of the services of their minor child and lost the child's companionship, and sustained other losses, as a result of appellee's employing the minor child to murder appellee's husband without obtaining the parents' consent to the employment.

— One who contributes to the delinquency of a minor by inducing the minor to enter into an attempted first degree murder is liable in tort to both the minor and the parents.

We disagree with the Michaelses on their claim that the trial court erred in striking the default judgment. We agree, however, with the Michaelses that there is a cause of action for parents who lose the services of their minor child; consequently, we reverse the trial court's dismissal of their cause of action regarding their minor son's services. In light of the Court of Appeals' recent decision on a related issue, however, we leave the creation of a cause of action for a parent's loss of a child's society and companionship to the Legislature. We also hold that under the facts in this case there is no action for causing the delinquency of a minor.

## ORDER OF DEFAULT

■ Appellants contend that the trial court erred in striking the default judgment against appellee. We disagree.

The flaw in appellants' argument is that the trial court did not strike a default judgment; the court struck an order of default.[3] An order of default is an interlocutory order. As we have previously stated, an "order of default determines liability; the default judgment determines the relief

---

**3.** It is unfortunate that the trial court used the term "judgment of default." This is incorrect and misleading. A judgment of default was not entered since there was no determination of the relief to be granted to appellants.

granted." *Hanna v. Quartertime Video & Vending Corp.*, 78 Md.App. 438, 444, 553 A.2d 752, *cert. granted*, 316 Md. 508, 560 A.2d 41 (1989). Thus, an order of default, as was granted in the instant case, is not appealable as a final judgment since no final relief has been granted. *Adams v. Mallory*, 308 Md. 453, 460, 520 A.2d 371 (1987).

Appellants contend, however, that the court erred in striking the "default judgment" because appellee did not comply with the requirements of Rule 2–535. Rule 2–535 provides in pertinent part:

> "(a) **Generally.**—On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under rule 2–534.

> "(b) **Fraud, Mistake, Irregularity.**—On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity."

In *Hanna*, we held that Rule 2–535 ordinarily does not preclude

> "the exercise by the court of its discretion to revise any interlocutory order until a final judgment is entered. Where Rule 2–535 does not apply because the judgment is not final, the court may, under its inherent power, control its own judgments until finality."

*Hanna*, 78 Md.App. at 449, 553 A.2d 752. *See also Henley v. Prince George's County*, 305 Md. 320, 328, 503 A.2d 1333 (1986). Moreover, in the exercise of that inherent power, a trial judge has broad discretion to modify an interlocutory order where that action is in the best interests of justice. *Henley*, 305 Md. at 328, 553 A.2d 752.

As there was no final judgment in this case, when the trial judge struck the "judgment of default" (the order of default) on July 5, 1988, the trial court was not constrained by the restrictions of Rule 2–535 in revising the order of default. Therefore, the trial judge was free to dissolve the

injunction ordering appellee to put the proceeds from the sale of her house into an escrow account. We find no abuse in the exercise of that discretion.

Since we hold that Rule 2–535 did not apply to the instant case, we need not address appellants' claims that appellee did not comply with its requirements. As explained, the trial court simply exercised its authority over an interlocutory order. Similarly, the issue that there was not defective service of process because appellee voluntarily appeared in court which appellants raise, albeit an interesting one, is moot. Regardless of whether service of process was defective, appellants raised this issue in conjunction with appellee's compliance with Rule 2–535, which we hold does not apply since the disposition was of an interlocutory order and not a final judgment.

## APPELLANTS' CAUSE OF ACTION: SERVICES

We turn next to the second challenge, namely whether appellants have a cause of action. Appellants contend that they do have a valid cause of action based on the loss of the services and companionship of their minor child as a result of appellee's employment of said minor child without their consent.

We agree with appellants that they have a valid cause of action for the loss of services of their minor child. Consequently, we reverse the decision of the trial court. But we leave the creation of a cause of action for loss of society and companionship to the Legislature.

### —Common Law Right—

Appellants rely on *Seglinski v. Baltimore Copper Smelting and Rolling Co.*, 149 Md. 541, 131 A. 774 (1926), which, they contend, is analogous to the instant case. In *Seglinski*, the defendant hired the plaintiff's minor son for a non-dangerous job in the copper manufacturing business with the plaintiff's approval. Later, without the plaintiffs' approval, the son's job was changed to one involving danger and the son was injured. The Court of Appeals reversed

the trial court's judgment for the defendant and recognized the plaintiffs' cause of action for the loss of the minor son's services. *Seglinski,* 149 Md. at 548, 131 A. 774. According to appellants, the instant case is akin to *Seglinski.* They argue that murder-for-hire is a dangerous occupation to which appellants would never have consented had appellee asked them for permission. We agree that *Seglinski* is on point [4] regarding Maryland's recognition of the common law parental cause of action for the loss of a minor child's services from hazardous employment without the parents' consent. *Accord, Hudson v. Hudson,* 226 Md. 521, 528, 174 A.2d 339 (1961).[5] We hold that appellants have a valid cause of action for loss of services and expenses necessarily flowing from the tort.

Appellants also cite several cases from other jurisdictions to bulwark their position. We comment on only two of their cases. To support their argument, they cite *Kramer v.*

---

**4.** There is, however, a distinction between *Seglinski* and the instant case. The primary difference is in the nature of the injury incurred. In *Seglinski,* as with the majority of case law in this area, the injury was physical. Here, the injury is, as we understand it, predominately emotional, although it is physical in the sense that the parental appellants are separated from the minor appellant.

**5.** Appellants point out that in *Seglinski* the Court wrote:
"In *Labatt's Master and Servant* (2d Ed.), vol. 7, sec. 2641, it is said: 'The doctrine of liability for employment of a minor in dangerous work without the parent's consent is of comparatively recent origin and development. * * *. It is now settled almost without dissent: "One who employs a minor, knowing him to be such, in a dangerous business, without the father's consent, becomes liable to compensate the father for any loss of the son's services *during minority,* which may result from an injury suffered in that business." The important feature of this doctrine is that *if the injury proximately results from the unlawful employment, the employer's freedom from negligence does not absolve him from liability,* and all questions of assumption of risk, contributory negligence of the minor, of negligence of a fellow servant, are excluded from consideration.' "
*Seglinski,* 149 Md. at 545, 131 A. 774 (emphasis added). From this quotation, we glean that, in Maryland, if the finder of fact determines that the unlawful employment is the proximate cause of the injury, the minor's contributory negligence or assumption of risk is irrelevant.

*Leineweber,* 642 S.W.2d 364 (Mo.1982), where an ex-husband and his mother conspired to prevent the mother from having custody of the child. That case, in turn, cites Comment g to § 700 Restatement (Second) of Torts, which says:

> "The parent can recover for the loss of society of his child and for his emotional distress resulting from its abduction or enticement."

This Comment to § 700, which is entitled "Causing Minor Child to Leave or not to Return Home," is not persuasive since this is a factual situation involving neither an abduction nor an enticement to leave home. In fact, had appellee's plan worked as she intended, the minor appellant would not have been apprehended by the police. He would have simply returned home after having murdered appellee's husband. Hence, we find *Kramer* inapposite.

Appellants also cite *Tidd v. Skinner,* 225 N.Y. 422, 122 N.E. 247 (1919), as a case which supports their ability to maintain their claim and their right to recover attorney's fees to cover the expenses of the minor appellant's defense in the criminal case. In *Tidd,* a widow sought to recover damages for the loss of the services of her son who had become a heroin addict by virtue of the defendant's activities. The Court sustained the action, equating the parent-child relationship with the master-servant relation. "[T]he right of a parent to recover for loss of services of a child has long been recognized at common law." *Tidd,* 122 N.E. at 251. The *Tidd* Court also provided for compensation for expenses incurred by reason of such injury. According to appellants, this generalized category of "expenses" includes appellants' claim for the costs they have incurred to defend the minor appellant. We agree.

At common law, the father of the minor child was entitled to the child's services and any income the child received. *Greenwood v. Greenwood,* 28 Md. 369, 384 (1868). The right of the father to the services and earnings of the minor child did not carry a concomitant duty to support at early common law, but the father's duty to support the child and

provide the child with necessaries soon attached. *Green-wood*, 28 Md. at 384. Moreover, property furnished by the father for support or necessaries remained the property of the father and hence, the father was entitled to recover from a third person who was responsible for the loss thereof. *Baltimore Steam Packet Co. v. Smith*, 23 Md. 402, 409 (1865).

Those necessaries furnished by the father have historically included food, clothing, shelter and education. Appellant posits that, in addition to these necessaries, counsel fees should be included within the meaning of necessaries. In *Carter v. Carter*, 156 Md. 500, 144 A. 490 (1929), the Court of Appeals addressed this position. The Court stated:

"Without attempting to define in terms or by illustrative cases the meaning of so general and essentially relative a word as 'necessaries,' when used in connection with the responsibility of a parent to a child, it may be said that its scope is not confined to such obvious things as board, lodging, and education, but may, under proper circumstances, extend to the services of an attorney, if reasonable and necessary for the protection or enforcement of the property rights of the minor or his personal protection, liberty, or relief.

"The right of recovery, however, is subject to the condition that the expenditure of money made or the services rendered were reasonable and necessary for the welfare of the infant, and especially, in the event of an action at law or in equity, is it required, before the father may be charged with the payment of attorney fees, that it must affirmatively appear that the proceeding begun or the defense interposed was reasonable and necessary for the temporal or personal welfare of the minor."

*Carter*, 156 Md. at 509, 144 A. 490 (citations omitted). *See also Serabian v. Alpern*, 284 Md. 680, 686–87, 399 A.2d 267 (1979); *Price v. Perkins*, 242 Md. 501, 504, 219 A.2d 557 (1966); *Price v. Price*, 232 Md. 379, 383–84, 194 A.2d 99 (1963). These principles relative to the rights and obligations of the father have been extended from the father to

the father and mother. *See Rand v. Rand,* 280 Md. 508, 517, 374 A.2d 900 (1977) and the Equal Rights Amendment, Art. 46 of the Maryland Declaration of Rights. Hence, under the circumstances presented here, we hold that the expenses incurred by appellants to defend their son in the criminal case may well be reasonable and necessary for the personal welfare of the minor appellant.

In conclusion, we hold that there is a valid parental cause of action (1) for the loss of a minor child's services in Maryland, limited to the pecuniary loss the parents will have suffered until the child reaches 18 and (2) the corresponding expenses necessary and reasonable for the welfare of the child. Moreover, the allegations in this case support that cause of action. We hold that the trial judge erred by dismissing appellants' cause of action.

## LOSS OF SOCIETY AND COMPANIONSHIP: THE CURRENT LEGAL ENVIRONMENT

The leading case recognizing the parental claim for loss of society and companionship of their child is *Shockley v. Prier,* 66 Wis.2d 394, 225 N.W.2d 495 (1975). In *Shockley,* the Wisconsin Supreme Court took notice of the change in the familial relationship between parents and children since the common law established the remedy of an action for the loss of a minor child's earnings. The Court commented:

"Society and companionship between parents and their children are closer to our present day family ideal than the right of the parents to the 'earning capacity during minority,' which once seemed so important when the common law was originally established."

*Shockley,* 225 N.W.2d at 499. The *Shockley* Court was not persuaded by the defendants' observation that several courts which had had the issue before them had declined to create a cause of action for the loss of a child's society and

companionship.[6]  Rather, the *Shockley* Court was convinced
by the reasoning of those courts which had permitted
recovery.  *See Lockhart v. Besel,* 71 Wash.2d 112, 426 P.2d
605, 609 (1967) (wrongful death statute should include loss
of companionship of a minor child during his or her minori-
ty).  The Wisconsin Supreme Court also recognized some of
the problems other courts have since identified and fre-
quently cited to support its decision not to permit this cause
of action.  For example, the *Shockley* Court was quick to
point out that proper jury instructions regarding damages
would be necessary.  *Shockley,* 225 N.W.2d at 500.  It also
conditioned the parental cause of action as permissible only
if joined with that of the minor child for his or her injuries.
*Shockley,* 225 N.W.2d at 501.

   *Shockley,* admittedly, has not had as significant
an impact on the legal terrain of parental loss
of a child's companionship as might have been
expected.  The majority of cases confronting this
issue have not expanded the common law action
for services to allow recovery for society,[7]

---

**6.** At that time, the following cases had not permitted this cause of
action: *Smith v. Richardson,* 171 So.2d 96 (Ala.1965); *Butler v. Chrest-
man,* 264 So.2d 812 (Miss.1972); *Brennan v. Biber,* 93 N.J.Super. 351,
225 A.2d 742 (Law Div.1966), *aff'd,* 99 N.J.Super. 247, 239 A.2d 261
(App.Div.1968); *Gilbert v. Stanton Brewery,* 295 N.Y. 270, 67 N.E.2d
155 (1946); *Kalsow v. Grob,* 61 N.D. 119, 237 N.W. 848 (1931); *Quinn
v. City of Pittsburgh,* 243 Pa. 521, 90 A. 353 (1914); *McGarr v. National
Providence Worsted Mills,* 24 R.I. 447, 53 A. 320 (1902).

**7.** *See, e.g., Smith v. Richardson,* 277 Ala. 389, 171 So.2d 96, 100 (1965)
((overruling earlier suggestion in *Durden v. Barnett,* 7 Ala. 169, 170
(1844), that the parental claim ought to be recognized)); *Baxter v.
Superior Court of Los Angeles County,* 19 Cal.3d 461, 138 Cal.Rptr. 315,
563 P.2d 871, 874 (1977); *Shattuck v. Gulliver,* 40 Conn.Sup. 95, 481
A.2d 1110, 1113 (1984) (holding that consortium is not a part of the
parent-child relationship); *Curtis v. County of Cook,* 109 Ill.App.3d
400, 65 Ill.Dec. 87, 92–3, 440 N.E.2d 942, 947–48 (1982); *Norman v.
Massachusetts Bay Transportation Authority,* 403 Mass. 303, 529
N.E.2d 139, 142 (1988); *Sizemore v. Smock,* 430 Mich. 283, 422
N.W.2d 666, 667 (1988) (legislature's province to create such a cause
of action); *Butler v. Chrestman,* 264 So.2d 812, 816–17 (Miss.1972);
*Wilson v. Lockwood,* 711 S.W.2d 545, 554 (Mo.App.1986) (parents
could only recover for loss of child's services or earning power and

although a few Courts have done so.[8] Additionally, more than one-third of our sister jurisdictions have yet to decide

---

for medical bills); *Siciliano v. Capitol City Shows, Inc.,* 124 N.H. 719, 475 A.2d 19, 24 (1984); *Brennan v. Biber,* 93 N.J.Super. 351, 225 A.2d 742, 752 (Law Div.1966), *aff'd,* 99 N.J.Super. 247, 239 A.2d 261 (App.Div.1968); *Wilson v. Galt,* 100 N.M. 227, 668 P.2d 1104, 1112 (1983); *Gilbert v. Stanton Brewery, Inc.,* 295 N.Y. 270, 67 N.E.2d 155, 157 (1946) (plaintiff's mother entitled only to damages from pecuniary loss from her daughter's injury plus reasonable medical expenses); *Michigan Sanitarium & Benevolent Ass'n v. Neal,* 194 N.C. 401, 139 S.E. 841, 842 (1927) (no cause of action for mother of 27–year–old son who became deranged and claimed loss of comfort and filial support—damages too remote on the record); *Beerbower v. Oregon ex rel. Oregon Health Sciences University,* 85 Or.App. 330, 736 P.2d 596, 599, *cert. denied,* 303 Or. 699, 740 P.2d 1212 (1987) (no statutory right to recover for loss of child's society and companionship); *Brower v. City of Philadelphia,* 557 A.2d 48, 51 (Pa.Commw.1989); *McGarr v. National & Providence Worsted Mills,* 24 R.I. 447, 53 A. 320, 326 (1902); *Gates v. Richardson,* 719 P.2d 193, 201 (Wyo.1986).

**8.** *E.g., Reben v. Ely,* 146 Ariz. 309, 705 P.2d 1360, 1363 (App.1985); *Howard Frank, M.D., P.C. v. Superior Court of Arizona,* 150 Ariz. 228, 722 P.2d 955, 9958 (1986) (en banc) (extending claim to adult children); *Miller v. Subia,* 514 P.2d 79, 80 (Colo.App.1973) (implication that action would be allowed upon display of adequate evidence); *Wilkie v. Roberts,* 91 Fla. 1064, 109 So. 225, 227 (1926) (but the law in Florida at present is unclear; in *Yordon v. Savage,* 279 So.2d 844, 846 (Fla.1973), the Court held that *Wilkie* permitted either parent to recover for the loss of the child's companionship, society and services. But other cases have limited *Wilkie* to authorizing only damages for lost services. *See Youngblood v. Taylor,* 89 So.2d 503, 506 (Fla.1956); *City Stores Co. v. Langer,* 308 So.2d 621, 622 (Fla.App.1975); *Dymek v. Nyquist,* 128 Ill.App.3d 859, 83 Ill.Dec. 52, 59, 469 N.E.2d 659, 666 (1984); *Ferguson v. Burkett,* 454 So.2d 413, 416 (La.App.1984) (recognizing a 1982 amendment giving rise to this claim); *First Trust Co. of North Dakota v. Scheels Hardware & Sports Shop, Inc.,* 429 N.W.2d 5, 11 (N.D.1988) (allowing parent to recover for loss of child's society and companionship cause by another's negligence); *Norvell v. Cuyahoga County Hosp.,* 11 Ohio App.3d 70, 463 N.E.2d 111, 114–15 (1983) (noting analogous amendment to state wrongful death act allowing compensatory damages for loss of society of decedent); *Jannette v. Deprez,* 701 S.W.2d 56, 58 (Tex.App.1985) (parents can recover for loss of companionship if they witness child's injury); *Shockley v. Prier,* 66 Wis.2d 394, 225 N.W.2d 495, 501 (1975).

Idaho, Iowa and Washington have included a parental cause of action for the loss of a child's consortium in their actions for the wrongful death of a child. *See* Idaho Code § 5–310 (1979) (interpreted in *Hayward v. Yost,* 72 Idaho 415, 242 P.2d 971 (1952) to include loss of society and companionship); Iowa R.Civ.P. 8; Wash.Rev.Code § 4.24.010 (1979).

this issue.[9]  *See generally,* Annotation, *Parent's Right to Recover for Loss of Consortium in Connection with Injury to Child,* 54 A.L.R.4th 112 (1987).

—Maryland Law—

Maryland falls into the last category, not having had the opportunity to address this precise issue.[10]  This is not to say that the Maryland courts have not addressed related causes of action.  In fact, last year the Court of Appeals in an analogous situation held that a child has no right to maintain a cause of action for loss of parental society and affection as a result of the negligence of a third party. *Gaver v. Harrant,* 316 Md. 17, 557 A.2d 210 (1989).  In *Gaver,* Chief Judge Murphy, writing for the majority, observed that "[a] cause of action allowing a minor child to recover for loss of a parent's society and affection was unknown at early common law."  *Gaver,* 316 Md. at 18, 557 A.2d 210.  The *Gaver* Court noted that, while a few courts have adopted this cause of action, the great majority have refused to do so.

Chief Judge Murphy then proceeded to enumerate the reasons other courts have given for rejecting or adopting the child's cause of action.  These lines of argument are invariably reused in the case law concerning the parent's

---

**9.** According to our research, the following jurisdictions have not yet addressed this precise issue: Alaska, Arkansas, Delaware, District of Columbia, Georgia, Hawaii, Kentucky, Indiana, Kansas, Maine, Minnesota, Montana, Nebraska, Nevada, South Carolina, South Dakota, Utah, Vermont, Virginia and West Virginia.

**10.** This Court has recently decided the issue of whether a parent of an entrustee can recover from an entrustor for loss of services and medical expenses. *Herbert v. Whittle,* 69 Md.App. 273, 517 A.2d 358 (1986), *cert. denied,* 309 Md. 49, 522 A.2d 393 (1987).  In *Herbert,* we acknowledged both a minor's cause of action for personal injuries suffered and a parental cause of action for consequential damages, such as the loss of services and expenses resulting from the injury. *Herbert,* 69 Md.App. at 295, 517 A.2d 358.  But this is, as we see it, simply a restatement of the common law action and not an extension of it to loss of society and companionship.

claim which is at issue here; hence, we will discuss them here as well.

As *Gaver* indicates, there are three general routes taken by courts which decline to authorize a child's cause of action and, not surprisingly, the analogous similar claim of a parent. First, there are courts which "on public policy grounds, have concluded that the legislature, and not the court, is the governmental body best suited to weigh the burdens of the proposed cause of action against the benefits." *Gaver*, 316 Md. at 21, 557 A.2d 210. Second, some courts refuse to permit the cause of action based on their belief that it is not really necessary and, in addition, it would adversely affect the cost of insurance, litigation and settlement. Lastly, other courts deny the cause of action by focusing on "strictly legal considerations." These courts typically recount the general principles that tort law disfavors injuries to the plaintiff which result from injuries to a third party and that the injury here is emotional rather than physical or economic.

*Gaver* then looks at cases which have endorsed an action for the child's loss of parental society and affection. State courts which have held that there is an action on behalf of the child almost invariably hold that the parents also have the ability to maintain their cause of action. These courts tend to theorize that "the child suffers a real and serious loss when a parent is injured." *Gaver*, 316 Md. at 23, 557 A.2d 210, referring to *Theama by Bichler v. City of Kenosha*, 117 Wis.2d 508, 344 N.W.2d 513, 516 (1984). These cases also tend, like *Shockley*, to arm themselves against the arguments they know they will encounter. For example, courts have: (1) countered the multiple litigation argument by suggesting compulsory joinder of claims and the benefit of compensation; (2) responded to the fear of double recovery by stating that this can be cured by proper jury instructions; (3) answered the claim that the damages are remote and uncertain by stating that these damages are no more remote than damages for spousal consortium; (4) rebutted the argument that money damages do not truly

compensate the child's loss since, in our legal system, money damages is the mechanism by in which we attempt to "ease the injured party's tragic loss." *Theama,* 344 N.W.2d at 520.

The majority opinion in *Gaver* then documents the affirmative reasons courts identify for allowing a child to recover for the loss of parent's society and companionship.[11] Analogies to both spousal consortium and wrongful death actions are frequently made. Other reasons include the invalidity of *pater familiae* and a growing recognition of children's rights. Still other courts simply see this cause of action as merely being an extension of already extant tort law.

After this thorough review, Chief Judge Murphy discussed the application of these theories in Maryland. He noted that this claim did not exist at common law, but continues that, of course, where necessary, Maryland courts have altered the common law given a change of circumstances. Recognizing a new cause of action, the Court continued, involves serious public policy concerns; the judiciary has generally declared that it is the province of the Legislature to determine the public policy of the State. Yet, the opinion proceeded to state that "we are empowered to adopt the proposed cause of action," but must first consider whether the existing rule is "unsound in the circumstances of modern life, a vestige of the past, no longer suitable to our people." *Gaver,* 316 Md. at 29, 557 A.2d 210, quoting *Harrison v. Montgomery County Bd. of Educ.,* 295 Md. 442, 459, 456 A.2d 894 (1983).

The Court determined that, although the uncertainty and remoteness of damages and inadequacy of money damages arguments were not *per se* persuasive, they were more so in *Gaver* because the victim was a "secondary" victim. The Court also looked at the related Maryland case law. For example, unlike other states which created a new cause of

---

**11.** For a general overview of this area of the law, *see* Love, *Tortious Interference with the Parent–Child Relationship: Loss of an Injured Person's Society and Companionship* 51 Ind.L.J. 590 (1976).

action for the wife for loss of consortium, Maryland created a joint husband-wife cause of action. *See Deems v. Western Maryland Ry.*, 247 Md. 95, 114, 231 A.2d 514 (1967). Nor was the Court persuaded by the analogy to the Maryland Wrongful Death Act.[12] The *Gaver* majority opined that, since wrongful death actions were created by statute, by analogy a new cause of action allowing children to pursue claims for the loss of parental society should be left to the Legislature. Finally, the Court concluded that the existing rule had not become outmoded, although leaving open the possibility that the Legislature might make such a change.[13]

—Case at Bar—

The thrust of the *Gaver* majority opinion is that in the absence of compelling changed circumstances or pressing societal need, which the Court did not find present in the examination of a child's right to sue for loss of parental consortium, the Court will not stray from the common law. In assessing the parental right to maintain a cause of action for loss of the society and companionship of a minor child, we must conduct a similar analysis. Much of what the Court said in *Gaver* applies equally here.

There was no common law action allowing a parent to recover for the loss of a minor child's society [14] and compan-

---

**12.** Codified at Md.Cts. & Jud.Proc.Code Ann. § 3–904(d) (1974, 1989 Repl.Vol.).

**13.** At the time of the writing of this opinion, we know of no such change being considered by the General Assembly.

**14.** We note that in his dissent in *Gaver* Judge Adkins asserts that "[t]his Court has long permitted a parent (a father only at early common law) to recover for loss of a minor child's services, society, etc." *Gaver*, 316 Md. at 37, 557 A.2d 210 (Adkins, J., dissenting), citing *Hudson v. Hudson*, 226 Md. 521, 174 A.2d 339 (1961); *Seglinski v. Baltimore Copper Co.*, 149 Md. 541, 131 A. 774 (1926); *Hussey v. Ryan*, 64 Md. 426, 2 A. 729 (1886); *County Commissioners v. Hamilton*, 60 Md. 340 (1883); Md.Fam.Law Code Ann. §§ 5–205, 5–206 (1984). We have reviewed these citations and cannot discern support for the

ionship. The doctrine of *pater familias* which allowed the father, and later the mother, to collect for the injuries to members of his family was based solely on economic injuries and had nothing to do with consortium-type of damages.

The same concerns for leaving this proposed cause of action to the Legislature exists here; additionally, the question of whether this type of claim is necessary is relevant. Further, the same issues of uncertainty and remoteness of damages, inadequacy of money damages to truly compensate the injured person and the expanding of consortium-type claims are all appropriate to the proposed claim in the case at bar. Although there may be merit in adopting this parental claim, we leave that policy consideration to the Legislature.[15]

## DELINQUENCY OF A MINOR

■ Appellants claim that they have a tort claim against appellee based in part on appellee's violation of Md.Cts. & Jud.Proc.Code Ann. § 3–831 (1974, 1989 Repl.Vol.). Subsection (a) of that section prohibits anyone from contributing to, encouraging or causing an act which renders a child delinquent. Appellants contend that the illegality of Tony's actions does not deprive him of all protection against the torts of others.

Appellants also suggest that murderers and drug dealers should not be allowed to escape tort liability simply because they lure minors into illegal, rather than legal, hazardous activities. They further propose that, at the very least, the jury should have determined whether the minor's conduct

---

"society" claim; we have already agreed that there is an action for a child's services.

**15.** Interestingly, such a cause of action might be used in a manner similar to its use in *Tidd;* that is, a parent could sue third-party tort feasors who are responsible for the drug addiction or the drug-running and subsequent arrest and conviction of their minor child.

was contributorily negligent which would defeat their action.   We disagree with appellants.

Appellants set out the proposition that, when a minor is injured as a result of the actions of another, two causes of action arise.   The child has a cause of action and the parents can maintain a cause of action for consequential damages, such as loss of services and expenses resulting from injury to the minor child.   *Herbert v. Whittle,* 69 Md.App. 273, 295, 517 A.2d 358 (1986), *cert. denied,* 309 Md. 49, 522 A.2d 393 (1987).   As we said in *Herbert:*

> "Nevertheless, an essential element of a parent's cause of action is that the requested compensation flow from a personal injury for which, under the law, the child would be entitled to recover. . . .   If the child is not entitled to recover, the parent cannot recover."

*Herbert,* 69 Md.App. at 295, 517 A.2d 358.

We hold that, because the minor appellant was tried as an adult, and not as a juvenile, § 3–831(a), which permits actions for contributing to certain conditions of the child, does not apply in the instant case.   In relevant part, § 3–831 provides:

> "(b) A person may be convicted under this section even if the child has not been found to have committed a violation, adjudicated delinquent, in need of supervision, or in need of assistance.   However, the court may expunge a delinquent adjudication from the child's record and enter it as a finding in the adult's case."

We read this provision as limiting § 3–831's application to juvenile proceedings.   As the note after Md.Cts. & Jud. Proc.Code Ann. § 3–802 (1974, 1989 Repl.Vol.) observes, juvenile proceedings are not criminal in nature; they are, rather, an attempt to rehabilitate the juvenile.   In the instant case, the minor appellant was sentenced to six years imprisonment for attempted first degree murder.   He was treated as an adult and neither he nor his parents can maintain an action based on appellee's violation of § 3–831.

In *Simpson v. State*, 55 Md.App. 240, 243, 461 A.2d 74 (1983), we held:

"Under § 3–831, a two pronged examination must be made by the trial judge. Initially, it must be determined that an adult willfully contributed to, encouraged, caused or tended to cause an act, omission or condition. Secondly, it must be determined that the act, omission or condition rendered a child delinquent, in need of supervision, or in need of assistance. Both aspects must be proved beyond a reasonable doubt. Maryland Rule 914(e)(2).

\* \* \* \* \* \*

"In order to convict Simpson, as charged, it would have to be shown that the child had committed an act which would be *a crime if committed by an adult* and that the child *'required guidance, treatment or rehabilitation.'* " (Emphasis in original.)

Since Tony was charged and tried as an adult, no guidance, treatment or rehabilitation was at issue.

## CONCLUSION

In *Certa v. Wittman*, 35 Md.App. 364, 371, 370 A.2d 573 (1977), we said, "Straight shooters should always win, but when there are none, bad guys need not look to us for help." The parental appellants in the case at bar were not "bad guys," and can pursue a cause of action for loss of their minor son's services. Their child, however, cannot make the same claim: he is not entitled to recover for his injuries. Where the parents' cause of action is totally separate, as with the common law right to services and necessary expenses, they can maintain their claim. But where the parents' claim stems from the child's, and the child could not collect, neither can the parents.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY APPELLANTS AND ONE–HALF BY APPELLEE.