## L. L. ET AL. *v.* NEWELL BRANDS, INC., ET AL.
### (SC 21005)

McDonald, D'Auria, Ecker, Alexander and Dannehy, Js.

*Syllabus*

The plaintiffs sought to recover from the defendants in federal court for, inter alia, the defendants' alleged violations of the Connecticut Product Liability Act (§ 52-572m et seq.). The United States District Court for the District of Connecticut certified to this court, pursuant to statute (§ 51-199b (d)), a question of law concerning whether Connecticut law recognizes a parent's claim for loss of filial consortium of a minor child who was severely injured as result of a defendant's allegedly tortious conduct. *Held*:

This court concluded that Connecticut law does not recognize a cause of action for loss of filial consortium.

Although this court has recognized causes of action for loss of spousal consortium and loss of parental consortium, the justifications for imposing liability for third-party emotional injuries in those circumstances, namely, the mutual dependence and reliance between spouses and a child's dependence on his or her parents, did not support the recognition of a cause of action for loss of filial consortium, as the relational interests at issue were sufficiently distinguishable.

The injury that is experienced by a parent whose child sustains a severe and potentially disabling injury is a form of emotional distress, rather than the type of relational loss or loss of society for which the tort of loss of consortium affords a remedy.

Although a substantial minority of other jurisdictions allow the parent of an injured child to recover for loss of filial consortium under certain circumstances, this court found more persuasive the reasoning of those jurisdictions that have recognized a clear conceptual and practical distinction between parental consortium and filial consortium, which militated against this court's recognition of a common-law cause of action for loss of filial consortium.

(*One justice concurring separately*; *one justice dissenting*)

Argued September 19, 2024—officially released February 11, 2025

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged violation of the Connecticut Product Liability Act, and for other relief, brought to the United States District Court for the District of Connecticut,

L. L. *v.* Newell Brands, Inc.

where the court, *Shea, J.*, certified a question of law to this court concerning whether Connecticut recognizes a parent's claim for loss of filial consortium when the minor child suffered severe injuries as a result of the defendants' allegedly tortious conduct.

*James J. Healy*, with whom were *Allison D. White*, *Kenneth J. Krayeske* and, on the brief, *Peter C. Bowman*, for the appellants (plaintiff Justin Lapointe et al.).

*Rachel M. Bradford*, with whom were *Christopher M. Vossler* and *Katharine L. Walker*, for the appellees (named defendant et al.).

*Linda L. Morkan*, with whom were *Sabrina M. Galli* and, on the brief, *Jeffrey J. White*, for the appellee (defendant Haier US Appliance Solutions, Inc.).

*Carey B. Reilly* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Edward W. Mayer, Jr.*, *Hannah L. Lauer*, *Glenn B. Coffin, Jr.*, and *Kelcie B. Reid* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

ALEXANDER, J. Over the past one-half century, this court has twice recognized a cause of action for loss of consortium. In *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 408 A.2d 260 (1979), this court recognized a claim for the loss of the consortium of an injured spouse; id., 496; defined to encompass both the tangible elements of consortium, such as a spouse's household services and financial support, and the intangible elements, including a spouse's "affection, society, [and] companionship . . . ." (Internal quotation marks omitted.) Id., 487. Thirty-six years later, in *Campos* v. *Coleman*, 319 Conn. 36, 123 A.3d 854 (2015), this court further extended a tortfeasor's liability to a minor

L. L. *v.* Newell Brands, Inc.

child's loss of the consortium of an injured parent. Id., 57. The sole issue in this case, which comes to us on certification from the United States District Court for the District of Connecticut, is whether we should further expand the scope of liability by recognizing a parent's claim for the loss of the consortium of an injured minor child. We decline to do so.

The following relevant facts and procedural history are drawn largely from the District Court's certification order. Where appropriate, we have supplemented that summary with additional allegations from the underlying complaint; see, e.g., *Gerrity* v. *R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 123, 818 A.2d 769 (2003); which we must accept as true for purposes of addressing the certified question. See, e.g., *Francis* v. *Kings Park Manor, Inc.*, 992 F.3d 67, 71 (2d Cir. 2021).

On June 23, 2020, the plaintiff Mary Lapointe (Mary) strapped her infant daughter, the plaintiff L. L.,[1] into a Graco car seat, placed the car seat on the kitchen counter of her Colchester home, next to an electric range stove, and left the room. While Mary was away from the kitchen, the car seat caught fire, as a result of the faulty design or production of both the car seat and the stove. L. L.'s aunt, the plaintiff Kayleigh Lapointe (Kayleigh), discovered the fire and rescued L. L. by removing her from the burning car seat. L. L. suffered severe burns and injuries to her entire body.

Mary, Kayleigh, L. L.'s father, the plaintiff Justin Lapointe (Justin), and L. L., through Justin as her next friend, brought the underlying action in the District Court against the defendants, Newell Brands Inc. (Newell), the manufacturer of the car seat; Target Stores, Inc. (Target), the retail seller of the car seat; Haier US Appliance Solutions, Inc. (Haier), which placed the

---

[1] In accordance with the District Court's certification order, we refer to the minor plaintiff by the initials L. L.

L. L. *v.* Newell Brands, Inc.

electric range into the stream of commerce; and General Electric Company.[2] They claimed violations of the Connecticut Product Liability Act (CPLA), General Statutes § 52-572m et seq., sounding in defective product design, manufacturing defect, breach of warranty, failure to warn, and recklessness. They also brought claims alleging violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., which the District Court subsequently dismissed. In addition, Mary and Justin brought claims for the loss of L. L.'s consortium, alleging that, due to L. L.'s injuries, they "lost the consortium, society, care and companionship of [their] daughter, and will continue to suffer such a loss in the future."

The defendants moved to dismiss, inter alia, the loss of consortium claims, contending that Connecticut law does not recognize claims for loss of filial consortium. The District Court denied, without prejudice, the defendants' motions as to the loss of consortium claims and, pursuant to General Statutes § 51-199b (d), certified the following question of law to this court: "Does Connecticut law recognize a parent's claim for loss of filial consortium in his or her child, who allegedly suffered severe, but nonfatal, injuries because of the defendants' tortious conduct?"[3]

The plaintiffs[4] acknowledge that neither this court nor the Appellate Court has recognized a cause of action for loss of filial consortium. They contend, however,

---

[2] The District Court dismissed the claims against General Electric Company. See *L. L.* v. *Newell Brands, Inc.*, Docket No. 3:23-cv-00803-MPS, 2024 WL 245023, *2 (D. Conn. January 23, 2024). For convenience, we hereinafter refer to Newell, Target, and Haier, collectively, as the defendants.

[3] In addition to the briefs filed by the parties, the Connecticut Trial Lawyers Association has filed a brief in support of the plaintiffs as amicus curiae, whereas the Connecticut Defense Lawyers Association has filed a brief in support of the defendants as amicus curiae.

[4] Because only the loss of consortium claims are at issue, hereinafter, all references to the plaintiffs are to Mary and Justin.

L. L. *v.* Newell Brands, Inc.

that recognition of such a cause of action is compelled by our decision in *Campos*. They argue that, once this court recognized claims for loss of parental consortium in *Campos*, loss of filial consortium is "a natural complement" and "[t]he logical next step . . . ." (Internal quotation marks omitted.) Although the injuries suffered by L. L. in the present case are tragic, we are not persuaded to recognize a cause of action for loss of filial consortium. Although the principles articulated in *Campos* continue to control this area of the law, the relational interests at issue in the present case are sufficiently distinguishable from those at issue in *Campos* as to not require the imposition of liability for third-party emotional injuries under a loss of consortium theory.

Implicit in *Campos* is the recognition that minor children are dependent on their parents for the provision of all their basic needs. See *Campos* v. *Coleman*, supra, 319 Conn. 48 (parent's failure to provide "love, care, companionship and guidance to minor children" is "uniquely harmful" (internal quotation marks omitted)). In *Campos*, we indicated that a child's recovery for loss of parental consortium would hinge on the extent to which the parent helps to meet the child's basic needs; id., 49 n.8; and, relying on that principle, we left open the possibility that a loss of parental consortium claim could lie for a plaintiff who, for reasons of disability, remains "dependent on parental care" past the age of majority. Id., 58 n.18.

Similarly, although spouses are legally independent adults, we observed in *Hopson* that mutual dependence and reliance traditionally have been among the defining features of "the variety of intangible relations [that] exist between spouses living together in marriage." *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 487; see also *Mueller* v. *Tepler*, 312 Conn. 631, 647, 95 A.3d 1011 (2014). Once again, this concept of dependence

L. L. *v.* Newell Brands, Inc.

is important both because it provides a clear dividing line between those relationships for which we do and do not recognize a cause of action for loss of consortium, and because it encapsulates the nature of the loss and the rationale for recovery. It is precisely because minor children are fully reliant on their parents, and spouses allow themselves to become mutually reliant in so many ways, that the benefits of holding a tortfeasor liable for loss of spousal and parental consortium are justified.

In arguing that this court should now recognize a cause of action for loss of filial consortium, the plaintiffs focus on the importance of the parent-child relationship and the seriousness of an injury to that bond. They contend that the factors that counseled in favor of compensating a loss of parental consortium in *Campos* necessarily weigh in favor for compensating a loss of filial consortium. The two causes of action, they submit, are flip sides of the same coin.

Regardless of whether the plaintiffs' claim in the present case is in fact the proverbial "flip side," which is itself debatable, we do not find the analogy apt. Although the ideal marriage might be one that is equal and reciprocal in all important respects, that is not true of the parent-child relationship. The parent does not obey the child; nor does the child supervise the parent. See, e.g., *Roberts* v. *Williamson*, 111 S.W.3d 113, 119 (Tex. 2003).

The fact that the present matter involves the extreme case, in which the parental and filial roles are most dissimilar, brings into sharp relief why few, if any, of the considerations that formed the basis of this court's decision in *Campos* support the recognition of a cause of action for loss of filial consortium. See *Campos* v. *Coleman*, supra, 319 Conn. 43. Parents are not dependent on their child—certainly not an infant child—for

L. L. *v.* Newell Brands, Inc.

their financial support, household assistance, or emotional solace.

In this respect, we are persuaded by the reasoning of the Texas Supreme Court in *Roberts* v. *Williamson*, supra, 111 S.W.3d 113. In that case, the court concluded that, although the parent-child relationship deserves special protection, as reflected in that court's recognition of a cause of action for loss of parental consortium, "the parent-child relationship is not reciprocal like husband and wife and that the child is the party to the relationship who needs special protection." Id., 118. The court explained: "Although parents customarily enjoy the consortium of their children, in the ordinary course of events a parent does not depend on a child's companionship, love, support, guidance, and nurture in the same way and to the same degree that a husband depends on his wife, a wife depends on her husband, or a minor or disabled adult child depends on his or her parent. Of course, it is true that such dependency may exist in a particular situation, but it is not intrinsic to the parent-child relationship as is a minor child's dependency on his or her parents and as is each spouse's dependency on the other spouse." (Emphasis omitted; internal quotation marks omitted.) Id., 117. "In our society the minor child requires his or her parent's nurturing, guidance, and supervision. The child is uniquely dependent [on] the parent for his or her socialization, that maturation process [that] turns a helpless infant into an independent, productive, responsible human being who has an opportunity to be a valuable, contributing member of our society. Without question, the child's relational interest with the parent is characterized by dependence. In contrast, the parent's relational interest with the child is not. In a real sense, the child is becoming, and the parent has become. Thus, the parent's loss of an injured child's consortium is different in kind from the child's loss of an injured parent's con-

351 Conn. 262　　　FEBRUARY, 2025　　　269

L. L. *v.* Newell Brands, Inc.

sortium.'' (Internal quotation marks omitted.) Id., 117–18. We agree with this reasoning and conclude that the justifications we relied on in *Hopson* and *Campos* do not warrant recognizing a cause of action for loss of filial consortium.

The emotional pain that is experienced by a parent whose child sustains a severe and potentially disabling injury is unimaginably devastating. However, the suffering for which the plaintiffs seek compensation is a form of emotional distress, rather than the type of relational loss or loss of society for which the tort of loss of consortium affords a remedy. This court has made clear that the two types of injuries are separate and distinct.[5] See, e.g., *Campos* v. *Coleman*, supra, 319 Conn. 60 n.20; see also *Pierce* v. *Casas Adobes Baptist Church*, 162 Ariz. 269, 272, 782 P.2d 1162 (1989). This distinction informs our decision not to recognize a common-law cause of action for loss of filial consortium.

The plaintiffs argue that persuasive authority from other states supports recognition of loss of filial consortium claims by the common law. They contend that, of the twenty-six states that have considered the issue, a clear majority—sixteen—have recognized such claims.

It is true that a substantial minority of other states allow the parent of an injured child to recover for loss of filial consortium under at least some circumstances. Of those states, however, only seven have recognized

---

[5] We acknowledge that this court has at times repeated language from a New York decision that appears to blur the lines between emotional distress and loss of consortium. See *Millington* v. *Southeastern Elevator Co.*, 22 N.Y.2d 498, 503, 239 N.E.2d 897, 293 N.Y.S.2d 305 (1968) (describing "the mental and emotional anguish caused by seeing a healthy, loving companionable mate turned into a shell of a person"); see also, e.g., *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 493 (referencing relevant language in *Millington*). We take this opportunity to clarify that, as other courts have recognized, however painful it may be to witness the suffering of a disabled child, that child's disability does not impair the *relational* value of parenting. See, e.g., *Dralle* v. *Ruder*, 124 Ill. 2d 61, 70–71, 529 N.E.2d 209 (1988).

L. L. *v.* Newell Brands, Inc.

the cause of action solely pursuant to their common-law authority.[6] In eleven other states, the cause of action was either enacted expressly by the legislature[7] (in some instances after the state high court had held that there was no common-law cause of action) or recognized judicially as arising by necessary implication from a wrongful death or related statute.[8] At the same time, the courts of thirteen additional states and the District of Columbia have expressly declined to adopt any common-law cause of action for loss of filial consortium,[9]

---

[6] See *Pierce* v. *Casas Adobes Baptist Church*, supra, 162 Ariz. 272–73; *United States* v. *Dempsey*, 635 So. 2d 961, 962–65 (Fla. 1994); *Fernandez* v. *Walgreen Hastings Co.*, 126 N.M. 263, 271–73, 968 P.2d 774 (1998); *First Trust Co. of North Dakota* v. *Scheels Hardware & Sports Shop, Inc.*, 429 N.W.2d 5, 9–11 (N.D. 1988); *Gallimore* v. *Children's Hospital Medical Center*, 67 Ohio St. 3d 244, 251, 617 N.E.2d 1052 (1993); *Benda* v. *Roman Catholic Bishop of Salt Lake City*, 384 P.3d 207, 209, 212–13 (Utah 2016); *Shockley* v. *Prier*, 66 Wis. 2d 394, 401–404, 225 N.W.2d 495 (1975).

[7] See Iowa Code Ann. § 613.15A (West 2018); Mass. Ann. Laws c. 231, § 85X (LexisNexis 2009); Okla. Stat. Ann. tit. 12, § 1055 (West 2015); R.I. Gen. Laws § 9-1-41 (c) (2012); Vt. Stat. Ann. tit. 14, § 1492 (b) (Cum. Supp. 2024); Wn. Rev. Code Ann. § 4.24.010 (West Cum. Supp. 2025); see also *Gillispie* v. *Beta Construction Co.*, 842 P.2d 1272, 1273–74 (Alaska 1992) (construing § 09.15.010 of Alaska Statutes); *Hayward* v. *Yost*, 72 Idaho 415, 425, 242 P.2d 971 (1952) (construing §§ 5-310 and 5-311 of Idaho Code).

We have included in this category states that have recognized a cause of action for loss of filial consortium arising from the wrongful death of a child but have not resolved the question of whether there is a cause of action for parents of an injured child.

[8] See *Masaki* v. *General Motors Corp.*, 71 Haw. 1, 19, 780 P.2d 566 (1989) (construing § 663-3 of Hawaii Revised Statutes); *Worsham* v. *Walker*, 498 So. 2d 260, 266 (La. App.1986) (construing article 2315 (B) of Louisiana Civil Code), writ denied, 500 So. 2d 423 (La. 1987), and writ denied, 500 So. 2d 424 (La. 1987); *Dawson* v. *Hill & Hill Truck Lines*, 206 Mont. 325, 333, 671 P.2d 589 (1983) (construing § 27-1-512 of Montana Code Annotated).

We disagree with the dissent that the courts of these three states are best understood as having imposed liability for loss of filial consortium pursuant to their common-law authority.

[9] See *Cardinale* v. *La Petite Academy, Inc.*, 207 F. Supp. 2d 1158, 1161 (D. Nev. 2002); *Baxter* v. *Superior Court*, 19 Cal. 3d 461, 466, 563 P.2d 871, 138 Cal. Rptr. 315 (1977); *Elgin* v. *Bartlett*, 994 P.2d 411, 420 (Colo. 1999), overruled in part on other grounds by *Rudnicki* v. *Bianco*, 501 P.3d 776 (Colo. 2021); *Wheeler ex rel. Neidlinger* v. *Drummond*, Docket No. 88C-OC-13, 1990 WL 58253, *2 (Del. Super. April 17, 1990); *Parker* v. *Martin*,

L. L. *v.* Newell Brands, Inc.

and eighteen others continue to follow the traditional common-law approach, allowing recovery for the documented value of a child's earnings and domestic services and the costs of any medical expenses, but not for the intangible elements of the parent-child relationship.[10]

The parties largely agree on the classifications of these other jurisdictions, but they draw very different lessons from them. The plaintiffs note that more than

905 A.2d 756, 765 (D.C. App. 2006); *Bayless* v. *Boyer*, 180 S.W.3d 439, 449 (Ky. 2005); *Dralle* v. *Ruder*, 124 Ill. 2d 61, 68–69, 529 N.E.2d 209 (1988); *Sizemore* v. *Smock*, 430 Mich. 283, 299, 422 N.W.2d 666 (1988); *Butler* v. *Chrestman*, 264 So. 2d 812, 816–17 (Miss. 1972); *Powell* v. *American Motors Corp.*, 834 S.W.2d 184, 191 (Mo. 1992); *Doe* v. *Greenville County School District*, 375 S.C. 63, 69, 651 S.E.2d 305 (2007); *Rains* v. *Bend of the River*, 124 S.W.3d 580, 598 (Tenn. App. 2003); *Roberts* v. *Williamson*, supra, 111 S.W.3d 119-20; *Gates ex rel. Gates* v. *Richardson*, 719 P.2d 193, 201 (Wyo. 1986).

We note that, in several of these states, state law allows recovery for loss of filial consortium arising from the wrongful death, but not injury, of a minor child.

[10] See *J.V. ex rel. Valdez* v. *Macy's, Inc.*, Docket No. 13-5957 (KSH) (CLW), 2014 WL 4896423, *4 (D.N.J. September 30, 2014); *Ms. K ex rel. S.B.* v. *South Portland*, 407 F. Supp. 2d 290, 299 (D. Me. 2006); *Santoro ex rel. Santoro* v. *Donnelly*, 340 F. Supp. 2d 464, 492–93 (S.D.N.Y. 2004); *Smith* v. *Richardson*, 277 Ala. 389, 394, 171 So. 2d 96 (1965); *Earl* v. *Mosler Safe Co.*, 291 Ark. 276, 279, 724 S.W.2d 174 (1987); *Cotton States Mutual Ins. Co.* v. *Crosby*, 149 Ga. App. 450, 452, 254 S.E.2d 485, rev'd in part on other grounds, 244 Ga. 456, 260 S.E.2d 860 (1979); *Forte* v. *Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 802–803 (Ind. 2001); *Schmeck* v. *Shawnee*, 231 Kan. 588, 594, 647 P.2d 1263 (1982); *Michaels* v. *Nemethvargo*, 82 Md. App. 294, 300, 571 A.2d 850 (1990); *Father A* v. *Moran*, 469 N.W.2d 503, 506 (Minn. App. 1991); *Connelly* v. *Omaha*, 284 Neb. 131, 150, 816 N.W.2d 742 (2012); *Siciliano* v. *Capitol City Shows, Inc.*, 124 N.H. 719, 724, 475 A.2d 19 (1984); *Bolkhir* v. *North Carolina State University*, 321 N.C. 706, 713, 365 S.E.2d 898 (1988); *Beerbower* v. *State ex rel. Oregon Health Sciences University*, 85 Or. App. 330, 332–35, 736 P.2d 596, review denied, 303 Or. 699, 740 P.2d 1212 (1987); *Brower ex rel. Brower* v. *Philadelphia*, 557 A.2d 48, 50–51 (Pa. Commw. 1989), appeal denied, 525 Pa. 604, 575 A.2d 569 (1990); *In re Certification of Questions of Law from the United States Court of Appeals for the Eighth Circuit*, 544 N.W.2d 183, 192–93 (S.D. 1996); *Virginia Farm Bureau Mutual Ins. Co.* v. *Frazier*, 247 Va. 172, 174 n.*, 440 S.E.2d 898 (1994); *State ex rel. Packard* v. *Perry*, 221 W. Va. 526, 539, 655 S.E.2d 548 (2007).

L. L. *v.* Newell Brands, Inc.

thirty states recognize some form of a loss of filial consortium claim (whether for any type of losses or only for loss of a child's services and income) on some basis (statutory or common law). The defendants counter that only a handful of states have done what the plaintiffs are inviting this court to do in the present case, namely, to recognize a common-law cause of action for loss of filial consortium, under which a parent can recover for solely intangible losses.

There is merit to both positions. Certainly, the fact that so many states allow recovery, on whatever basis, indicates that loss of filial consortium claims are neither well outside the national mainstream nor prohibitively costly to litigate. The plaintiffs also note that, of the approximately twenty other states that, like Connecticut, recognize a cause of action for loss of parental consortium, most have also adopted a cause of action for loss of filial consortium. Nevertheless, we find more persuasive the reasoning of those states that have recognized a clear conceptual and practical distinction between parental consortium and filial consortium that militates against recognizing a common-law cause of action for loss of the latter. Indeed, most of the states that recognize claims limited to the loss of a child's services and income do so under a different label and continue to purport not to recognize loss of filial consortium claims.[11]

Finally, the dissent contends that the time is ripe to recognize a cause of action for loss of filial consortium because "[t]he trend is toward recognition of such

---

[11] See, e.g., *Santoro ex rel. Santoro* v. *Donnelly*, 340 F. Supp. 2d 464, 492–93 (S.D.N.Y. 2004); *Smith* v. *Richardson*, 277 Ala. 389, 394, 171 So. 2d 96 (1965); *Cotton States Mutual Ins. Co.* v. *Crosby*, 149 Ga. App. 450, 452, 254 S.E.2d 485, rev'd in part on other grounds, 244 Ga. 456, 260 S.E.2d 860 (1979); *Father A* v. *Moran*, 469 N.W.2d 503, 506 (Minn. App. 1991); *Siciliano* v. *Capitol City Shows, Inc.*, 124 N.H. 719, 724, 475 A.2d 19 (1984); *Brower ex rel. Brower* v. *Philadelphia*, 557 A.2d 48, 50–51 (Pa. Commw. 1989), appeal denied, 525 Pa. 604, 575 A.2d 569 (1990).

351 Conn. 262        FEBRUARY, 2025        273

L. L. *v.* Newell Brands, Inc.

claims, with the vast majority occurring after 1987.''
(Internal quotation marks omitted.) As authority for
this proposition, the dissent relies on Tentative Draft
No. 1 of the Restatement (Third) of Torts, Concluding
Provisions § 48 B, comment (b), in which the drafters
recommended changing course and recognizing a cause
of action for loss of filial consortium.[12] We are not per-
suaded.

Although it is true that a handful of state courts recog-
nized the cause of action in the 1980s and 1990s, that
trend, such as it was, has largely run its course. In the
past one-quarter century, only one more state court has
embraced the plaintiffs' position. See *Benda* v. *Roman
Catholic Bishop of Salt Lake City*, 384 P.3d 207, 209,
212–13 (Utah 2016).[13] During that same time period, the
courts of at least ten other states have declined the
opportunity to do so. The drafters of the proposed new
rule acknowledge that their approach remains a minor-
ity position; see Restatement (Third), supra, § 48 B,
comment (b), p. 297; and they fail to offer any rationale
that persuades us of a need to adopt the rule at the
present time.[14]

[12] Section 703 of the Restatement (Second) of Torts permits claims by
parents for injuries to their unemancipated children but limits parents'
recovery to the lost earning capacity of the child and any medical expenses
that the parents incurred. 3 Restatement (Second), Torts § 703, p. 510 (1977).
The proposed new rule would permit parents of an injured child to also
recover for the loss of the child's society, defined to include "loss of affection,
comfort, companionship, love, and support, and loss of services."
Restatement (Third), Torts, Concluding Provisions § 48 B, p. 297 (Tentative
Draft No. 1, 2022).

[13] Although Montana had previously recognized a cause of action for loss
of filial consortium arising from wrongful death, in *Hern* v. *Safeco Ins. Co.
of Illinois*, 329 Mont. 347, 125 P.3d 597 (2005), the Montana Supreme Court
extended the cause of action to injuries to *adult* children on whom the
parents are extraordinarily dependent. See id., 362–63.

[14] We recognize that, given the comprehensive review process of the Ameri-
can Law Institute, and the numerous entities within that body that participate
in the production of the Restatements of the law, a tentative draft of a
Restatement may well have significant persuasive value in our assessment
of a particular point of law. Indeed, the American Law Institute states

L. L. *v.* Newell Brands, Inc.

The certified question is answered in the negative.

No costs shall be taxed in this court to any party.

In this opinion D'AURIA, ECKER and DANNEHY, Js., concurred.

ECKER, J., concurring. This is a hard case. The majority and dissenting opinions both make valid points and reflect reasonable perspectives on the law governing loss of consortium. At the end of the day, I agree with and join the majority opinion. I write separately to underscore that we have not been requested to determine whether Connecticut law recognizes a cause of action other than loss of consortium to compensate parents for their emotional distress resulting from serious and life-changing injuries sustained by their minor child as a result of the tortious conduct of another.

The question of tort compensation naturally arises because, first, the allegations of tortious conduct by the defendants are presumed to be true at the pleading stage, and, second, the parents' emotional harm is so palpable under these circumstances. With respect to the nature and degree of harm, I agree with the majority that the emotional pain experienced by parents whose child sustains a serious, life-changing injury ordinarily will be "unimaginably devastating." It seems indisputable that the parents' anguish will be enormous, long-lasting, and distinctive. The anguish comes not only

that the tentative draft "represent[s] [its] position until the official text is published." (Internal quotation marks omitted.) *HELG Administrative Services, LLC* v. *Dept. of Health*, 154 Haw. 228, 236 n.8, 549 P.3d 313 (2024); see *Varlack* v. *SWC Caribbean, Inc.*, 550 F.2d 171, 180 (3d Cir. 1977) (concluding that Virgin Islands statute referring to Restatements "as an expression of 'the rules of common law' " does not "[contemplate] strict adherence to old Restatements which no longer accurately summarize the common law" because "the weight of authority now lies behind the position in the [t]entative [d]raft of the [s]econd Restatement, rather than that contained in the [f]irst Restatement, which dates from 1939" (emphasis omitted)).

L. L. *v.* Newell Brands, Inc.

from the pain of seeing one's child suffer, but also from the parents' knowledge that the serious nature of the injuries has changed their child's life forever, and will require their child to face an unending series of challenges and struggles that were inconceivable prior to the accident. This distress is as real and severe as any noneconomic harm that the law of torts deems compensable. It is also a harm to parents that would be readily foreseeable to defendants when they manufacture or sell a product designed for use by children. Nonetheless, I also agree with the majority that this particular type of emotional distress is not within the scope of damages recoverable for "relational loss or loss of society" traditionally compensated in connection with a claim for loss of consortium.

In my view, it remains an open question whether parents may obtain compensation for their emotional distress based on a different legal theory, such as bystander emotional distress or negligent infliction of emotional distress, resulting from serious injuries to their minor child.

McDONALD, J., dissenting. "It is a [well settled] principle of law that a tortfeasor takes his victim as he finds him. Should the victim be married, it follows that the spouse may suffer personal and compensable . . . injuries" and that those "injuries should not go uncompensated." *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 493, 408 A.2d 260 (1979). Should the victim have a minor child, that child may suffer personal, compensable injuries and may recover with a parental consortium cause of action. See *Campos* v. *Coleman*, 319 Conn. 36, 37–38, 44–47, 57, 123 A.3d 854 (2015). Now, faced with a certified question that asks whether this court should recognize a common-law loss of consortium cause of action for parents when their child is injured, the majority dispenses with this court's well settled reasoning by concluding that a loss of filial consortium claim

L. L. *v.* Newell Brands, Inc.

implicates a relational interest not deserving of legal protection. But this court has never relied on distinctions between the relational interests of spouses, parents, and children when determining whether to recognize a loss of consortium cause of action. See, e.g., id., 43–58; *Hopson* v. *St. Mary's Hospital*, supra, 492–96. Instead, we have ordinarily engaged in a policy analysis; see, e.g., *Campos* v. *Coleman*, supra, 40 n.5; which the majority declines to do without explanation. Because I believe that the balance of factors from this court's well settled policy framework supports the recognition of a loss of filial consortium cause of action, I respectfully dissent.

This case comes to us as a certified question from the United States District Court for the District of Connecticut. The plaintiffs Justin Lapointe and Mary Lapointe are seeking to recover damages for the loss of filial consortium of their infant daughter, the plaintiff L. L.[1] They allege that Mary placed L. L. into a car seat, temporarily set L. L. on the kitchen countertop, and inadvertently turned on the electric range, causing L. L.'s car seat to catch fire. L. L. allegedly suffered severe injuries, including burns to her entire body, which resulted in the amputation of fingers on her right hand.

The plaintiffs brought a product liability action in the District Court against the defendants—car seat manufacturer Newell Brands, Inc., car seat retailer Target Stores, Inc., stovetop manufacturer Haier US Appliance Solutions, Inc., and stovetop designer General Electric

---

[1] Justin, Mary, L. L.'s aunt, the plaintiff Kayleigh Lapointe, and L. L., through Justin as her next friend, brought this product liability action in the District Court. They brought various claims, including claims alleging violations of the Connecticut Product Liability Act, General Statutes § 52-572m et seq., and claims alleging violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Because the loss of consortium claims are the only claims at issue before this court, for simplicity, all references to the plaintiffs are to Justin and Mary.

351 Conn. 262 FEBRUARY, 2025 277

L. L. *v.* Newell Brands, Inc.

Company.[2] The plaintiffs alleged that Newell and Target "knew or should have known" that the car seat contained defective components that did not satisfy federal fire safety standards, and that they failed to warn customers about the risk of injury. The plaintiffs also alleged that Haier "knew or should have known" that the stovetop was defective because it lacked safety mechanisms to prevent customers from accidently turning it on, and that Haier had failed to warn customers of that risk. The defendants moved to dismiss, among other things, the plaintiffs' loss of filial consortium claims. The District Court denied, without prejudice, the defendants' motions to dismiss as to those claims and issued an order certifying the following question to this court: "Does Connecticut law recognize a parent's claim for loss of filial consortium in his or her child, who allegedly suffered severe, but nonfatal, injuries because of the defendants' tortious conduct?"

Before this court, the plaintiffs argue that our reasoning in *Campos* v. *Coleman*, supra, 319 Conn. 36, supports adopting a loss of filial consortium cause of action because *Campos* rooted the loss of parental consortium cause of action in the reciprocal and unique parent-child relationship, not in the loss of parental services. See id., 46–47. The plaintiffs highlight that, although, in *Campos*, this court concluded that "parental consortium consists of both a parent's *services* to his or her children . . . [and] such *intangibles* as the parent's love, care, companionship and guidance"; (emphasis added; internal quotation marks omitted) id., 50; it is "the impairment of [the parent-child] relationship"— not the loss of the parent's services—that is the critical element giving rise to a loss of parental consortium

_____

[2] The claims brought against General Electric Company were all dismissed with prejudice. See *L. L.* v. *Newell Brands*, *Inc.*, Docket No. 3:23-cv-00803-MPS, 2024 WL 245023, *2 (D. Conn. January 23, 2024). For simplicity, we hereinafter refer to Newell, Target, and Haier, collectively, as the defendants.

L. L. *v.* Newell Brands, Inc.

claim. Id., 47. Consequently, the plaintiffs argue, because a parent can also suffer an impaired relationship with their child when a tortfeasor injures their child, this court should recognize a loss of filial consortium claim as the necessary extension of a loss of parental consortium claim. Following *Campos*, the plaintiffs reason, a loss of services should not be necessary to recover under a filial consortium claim. Instead, they argue, a loss of filial consortium claim should compensate parents for " 'purely emotional injuries' " stemming from the tortfeasor's impairment of the parent-child relationship.

The defendants contend that the parent-child relationship is not reciprocal because, although parents are legally obligated to provide services to their minor children, the reverse is not true. Instead, children are uniquely dependent on their parents. Accordingly, the defendants argue that this court should not recognize a loss of filial consortium cause of action because it is not the logical complement to a loss of parental consortium claim. Haier further contends that, if this court were to recognize a filial consortium claim, it would allow for the recovery of intangible losses alone and would depart from consortium's " 'conceptualistic unity' " of tangible and intangible losses.

I

It is well settled that this court has the "inherent authority, pursuant to the state constitution, to create new causes of action. . . . Moreover, it is beyond dispute that we have the power to recognize new tort causes of action, whether derived from a statutory provision or rooted in the common law." (Internal quotation marks omitted.) *Byrne* v. *Avery Center for Obstetrics & Gynecology, P.C.*, 327 Conn. 540, 554, 175 A.3d 1 (2018). This court has exercised this authority when, among other instances, it adopted a common-

L. L. *v.* Newell Brands, Inc.

law loss of spousal consortium cause of action; *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 496; and a common-law loss of parental consortium cause of action. *Campos* v. *Coleman*, supra, 319 Conn. 57. Accordingly, there can be no question that, in the present case, this court has the authority to recognize a common-law cause of action for the loss of filial consortium.

This court's reasoning in its consortium case law reflects society's evolved understanding of the nature of certain intimate relationships between spouses and between parents and their children. This case law strongly supports recognition of a filial consortium cause of action. See, e.g., *Craig* v. *Driscoll*, 262 Conn. 312, 339, 813 A.2d 1003 (2003) ("[t]he issue of whether to recognize a common-law cause of action . . . is a matter of policy for [this] court to determine based on the changing attitudes and needs of society"). A review of that case law is foundational to my evaluation of the plaintiffs' request that this court recognize a filial consortium cause of action.

In *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 496, this court first recognized a loss of spousal consortium cause of action after previously declining to do so in *Marri* v. *Stamford Street Railroad Co.*, 84 Conn. 9, 22–24, 78 A. 582 (1911). In *Marri*, this court declined to recognize a loss of spousal consortium cause of action after the legislature enacted chapter 114 of the 1877 Public Acts, commonly called the Married Women's Act, which permitted women to recover for injuries that impaired their capacity to serve their husbands. See id., 21–24. This court reasoned that, because of the Married Women's Act, a woman's right to recover for her lost services now "must be regarded as exclusive . . . ." Id., 23. As a result, if a husband were to recover for loss of spousal consortium, it would derive solely from a loss of his wife's companionship. See id. But this court reasoned that the loss of companionship

L. L. *v.* Newell Brands, Inc.

alone could not serve as the basis for a consortium cause of action. See id., 23–24. Specifically, this court concluded that the loss of a spouse's services constituted the "foundation[al]" element of consortium, without which recovery should not be available. Id. In short, the decision in *Marri* "rested primarily [on] distinctions then drawn between the sentimental and service aspects of claims for loss of consortium." *Hopson* v. *St. Mary's Hospital*, supra, 491.

Approximately seventy years later, in *Hopson*, this court overruled *Marri* and rejected *Marri*'s bifurcated understanding of consortium. See id., 487, 490–93, 496. We adopted the emerging view that consortium is a " 'conceptualistic unity' " and that its traditional elements—the loss of services and intangibles—are inseparable. Id., 492; see also id., 487 (defining intangible aspects of spousal relationship to include "companionship, dependence, reliance, affection, sharing and aid" (internal quotation marks omitted)). Citing *Hitaffer* v. *Argonne Co.*, 183 F.2d 811, 813–14 (D.C. Cir.) (overruled in part on other grounds by *Smither & Co.* v. *Coles*, 242 F.2d 220 (D.C. Cir.), cert. denied, 354 U.S. 914, 77 S. Ct. 1299, 1 L. Ed. 2d 1429 (1957)), cert. denied, 340 U.S. 852, 71 S. Ct. 80, 95 L. Ed. 624 (1950), we emphasized that "*recovery for loss of consortium should [not] depend [on] whether there was a loss of services.*" (Emphasis added.) *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 492. Instead, we found persuasive the reasoning in *Hitaffer* that "what [is] significant [is] the injury to the unity of the marital relation." Id. Following *Hopson*, then, a spouse could recover for a loss of spousal consortium regardless of whether the injured spouse had previously provided any services to the consortium spouse. By adopting a unified view of consortium, this court moved beyond *Marri*'s archaic, service-based understanding of consortium that was rooted in the long

351 Conn. 262 FEBRUARY, 2025 281

L. L. *v.* Newell Brands, Inc.

rejected idea that a husband possessed a *proprietary* interest in his wife's domestic labor. See id., 487–88.

To that end, *Hopson* recognized that consortium would compensate an injured spouse for the loss of specific *relational* interests. See id., 492–94; see also id., 494 (noting that consortium may compensate for "loss of companionship, society, affection, sexual relations [or] moral support"). Accordingly, this court rejected the notion that a loss of consortium is an indirect injury. See id., 493 ("[t]o describe such a loss as indirect is only to evade the issue" (internal quotation marks omitted)). Rather, this court concluded that a loss of consortium—now understood to include the intangible aspects of a relationship—was a "*personal* . . . though not physical" injury that is "a *direct* result of [a] defendant's negligence . . . ." (Emphasis added.) Id. To describe the consortium spouse's injury as indirect would fall back to the idea that a loss of consortium cause of action compensates that spouse only for a loss of services, rather than also for a loss of relational interests.

In *Campos* v. *Coleman*, supra, 319 Conn. 36, this court relied on the same notion that consortium is a " 'conceptualistic unity' " that compensates for the personal loss of a relational interest when it recognized a cause of action for a loss of parental consortium. Id., 50, 57; see also id., 50 (defining parental consortium to include not only "a parent's services to his or her children," but also "such intangibles as the parent's love, care, companionship and guidance" (internal quotation marks omitted)). Similar to the court's reasoning in *Hopson*, in *Campos*, this court concluded that "familial consortium claims" were compensable in "cases involving *the impairment of* [*the parent-child*] *relationship* . . . ." (Emphasis added.) Id., 47. To be sure, this court was aware of the lingering concern that services might provide a surer foundation for calculating damages in

L. L. *v.* Newell Brands, Inc.

a consortium cause of action than consortium's intangible, relational elements. Nevertheless, we quoted *Hopson* to reiterate that "*courts commit error when they attempt to distinguish between the different elements of* [*this*] *conceptualistic unity* . . . ." (Emphasis added; internal quotation marks omitted.) Id., 50, quoting *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 492. In sum, in both *Hopson* and *Campos*, this court reasoned that a loss of consortium cause of action allows the spouse or child of the injured party to recover when an injury to that spousal or parent-child relationship occurs.

It logically follows from this court's reasoning in *Hopson* and *Campos* that this court should recognize a loss of filial consortium cause of action. When a parent suffers an impaired relationship with their child because a tortfeasor negligently injured the child, the parent should be able to recover for any provable impairment to that relationship—just as a spouse can recover for a loss of spousal consortium, and just as a child can recover for the loss of parental consortium. Because "there is nothing in reason to differentiate the parent's loss of the joy and comfort of his [or her] child from that suffered by the child"; *Mendillo* v. *Board of Education*, 246 Conn. 456, 485 n.20, 717 A.2d 1177 (1998), overruled in part on other grounds by *Campos* v. *Coleman*, 319 Conn. 36, 123 A.3d 854 (2015); it is entirely arbitrary not to recognize a cause of action for a parent's personal loss of society, companionship, and comfort of their child.

This court has long affirmed that the parent-child relationship is a unique, protected legal relationship. See, e.g., *Campos* v. *Coleman*, supra, 319 Conn. 46–47. Parents have a constitutional "right to family integrity," which includes a parent's interests "in the companionship, care, custody and management of his or her children . . . ." (Citations omitted; internal quotation

L. L. *v.* Newell Brands, Inc.

marks omitted.) *Pamela B.* v. *Ment*, 244 Conn. 296, 310, 709 A.2d 1089 (1998); see also, e.g., *Hepburn* v. *Brill*, 348 Conn. 827, 839, 312 A.3d 1 (2024) ("[t]he essence of parenthood is the companionship of the child and the right to make decisions regarding [that child's welfare]" (internal quotation marks omitted)). We have underscored that parents and children share a "unique emotional attachment . . . ." *Campos* v. *Coleman*, supra, 43. Because "the parent-child relationship is essentially different from other familial relationships," we have recognized that injuries to that relationship are "uniquely harmful . . . ." (Emphasis omitted.) Id., 48. Indeed, it was that recognition that led this court to recognize a loss of parental consortium cause of action. See id., 43–47, 57.

A parent's interests in their child are also substantially the same as the interests protected by loss of spousal and parental consortium causes of action. In *Hopson*, we noted that a party bringing a loss of spousal consortium claim could seek recovery for a "loss of companionship, society, affection . . . and moral support," among other intangible elements of a spousal relationship. *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 494. Similarly, in *Campos*, we defined parental consortium to include "the parent's love, care, companionship and guidance . . . ." (Internal quotation marks omitted.) *Campos* v. *Coleman*, supra, 319 Conn. 50. Certainly, a parent can also receive love, companionship, society, affection, and moral support from their child. Accordingly, because this court has already concluded that a child's interests in their parents' love, companionship, and society are protected, we must safeguard a parent's same interests by recognizing a filial consortium cause of action for parents whose minor child is negligently injured by a tortfeasor. See, e.g., *United States* v. *Dempsey*, 635 So. 2d 961, 965 (Fla. 1994) (loss of filial consortium includes "loss of

L. L. *v.* Newell Brands, Inc.

[a child's] companionship, society, love, affection, and solace''); *Gallimore* v. *Children's Hospital Medical Center*, 67 Ohio St. 3d 244, 251, 617 N.E.2d 1052 (1993) ('' '[c]onsortium' includes services, society, companionship, comfort, love and solace''). A parent's interests in their child's love, companionship, and society are no less deserving of protection than a child's or spouse's interests in those same intangible aspects of a familial relationship. Cf. *Mendillo* v. *Board of Education*, supra, 246 Conn. 499–500 (*Berdon, J.*, concurring in part and dissenting in part).

The majority declines to recognize a filial consortium cause of action almost entirely on the ground that a child's relationship with their parents is different from a parent's relationship with their child. This reasoning is misguided. I recognize that, in *Campos*, this court identified particular aspects of a minor child's relationship with their parents that are significant—a unique emotional bond, the parents' distinct legal duties to their child, and a child's legal entitlement to their parents' care—but they do not all apply with equal force in a loss of filial consortium context. See *Campos* v. *Coleman*, supra, 319 Conn. 44–47. Although the unique emotional bond between a parent and child is reciprocal, it is true that a child has no legal duties to their parent, and a parent is not legally dependent on their child or legally entitled to their child's services.

In *Campos*, however, this court did not make legal dependency and reciprocal legal duties required elements of a loss of consortium claim. See id., 45 (''the relationship between a parent and a minor child is the only one of these [nonspousal, familial] relationships that gives rise to legally enforceable rights''). This court emphasized that it was a child's distinct legal relationship with their parents that defines the limits of who could bring a loss of parental consortium claim. See id. That is, this court reasoned that a child could bring a

L. L. *v.* Newell Brands, Inc.

claim for the loss of a parent's consortium, but not for
the loss of an aunt's or uncle's consortium, because the
parent-child relationship is "unique" in various ways.
Id., 44–47. But this court did not make legal dependency
a necessary element of a parental consortium cause of
action. Notably, in *Campos*, this court never described
the parent-child relationship in terms of legal or rela-
tional dependence. The majority recognizes this when
it notes that the idea of dependence is merely "[i]mplicit
. . . ." Making legal and relational dependence a neces-
sary element to recover in connection with a loss of
consortium claim—as the majority implies—would risk
overruling this court's reasoning in *Campos* and *Hopson*
and would fall back on the outdated notion of a parent's
or spouse's respective proprietary interest in their child
or spouse.

## II

The public policy factors this court has previously
identified in *Mendillo* v. *Board of Education*, supra, 246
Conn. 485, also strongly support my conclusion that
this court should recognize a cause of action for loss
of filial consortium. To determine whether to adopt a
loss of parental consortium cause of action, this court
in *Mendillo* inquired whether (1) recognizing "the cause
of action would require [the imposition of] arbitrary
limitations" on the class of potential plaintiffs, (2) "rec-
ognition would impose" an "additional economic bur-
den . . . on the general public," (3) "recognition would
yield significant social benefits," (4) recognizing the
cause of action would create a "substantial risk of dou-
ble recovery," and (5) "the weight of judicial authority"
supported recognition. Id. In *Campos*, this court ana-
lyzed the same public policy considerations before it
recognized a cause of action for loss of parental consor-
tium. See *Campos* v. *Coleman*, supra, 319 Conn. 43–57;
see also *Mueller* v. *Tepler*, 312 Conn. 631, 633, 656–58,
95 A.3d 1011 (2014) (analyzing public policy factors

L. L. *v.* Newell Brands, Inc.

identified in *Mendillo* when considering whether to extend loss of spousal consortium claim to unmarried same-sex partners).[3]

Without explanation, the majority almost entirely dispenses with this well settled policy analysis. In doing so, the majority principally relies on a single distinction drawn from an indirect implication from this court's previous holdings rather than on a policy analysis. Moreover, the majority explicitly addresses only one policy factor articulated in *Mendillo*—the weight of judicial authority. By focusing on only one policy factor, the majority has inordinately emphasized the policy decisions of other states, such as Texas, while declining to engage in a thorough policy analysis as it relates to Connecticut. Because I do not think that this is appropriate—at least not without an explanation as to why it is warranted to abandon this court's policy analysis and to rely on the reasoning of other state courts—I consider whether this court should recognize a loss of filial consortium cause of action using the well settled policy framework employed by this court in *Hopson*, *Mendillo*, and *Campos*. First, recognizing a loss of filial consortium cause of action would not create "a practically unlimited class of potential plaintiffs." *Mendillo* v. *Board of Education*, supra, 246 Conn. 485. Far from it. Although a child's sibling, grandparent, aunt, or uncle might suffer harm because of an injury to the child, such relationships between a child's relative and the

___

[3] In *Clohessy* v. *Bachelor*, 237 Conn. 31, 675 A.2d 852 (1996), this court reasoned that the first step in determining whether to recognize a common-law cause of action is to determine whether a reasonable person in the defendant's position could foresee the type of harm that would occur. See id., 45. There is no question that harm to a parent is foreseeable when a tortfeasor negligently injures the parent's child. See, e.g., *Campos* v. *Coleman*, supra, 319 Conn. 48 (concluding that loss of parental consortium is "eminently foreseeable" when tortfeasor negligently injures parent). Accordingly, I consider only whether the public policy factors identified in *Mendillo* weigh in favor of recognition.

351 Conn. 262 FEBRUARY, 2025 287

L. L. *v.* Newell Brands, Inc.

child do not "present equally strong claims of loss of consortium as [claims] arising from the relationship between a minor child and a parent." (Internal quotation marks omitted.) *Campos* v. *Coleman*, supra, 319 Conn. 44. As we reasoned in *Campos*, the parent-child relationship is unique, and other familial relationships "[arise] *through* the parent-child relationship." (Emphasis in original.) Id. In general, then, a parent will suffer a "uniquely harmful" injury and can present a unique loss of consortium claim when their child is injured. Id., 48. This court's conclusion in *Campos* that a loss of parental consortium cause of action does not lead to limitless liability applies with equal force to a loss of filial consortium cause of action. The parent-child relationship represents a clear limit, as we have already concluded. See id., 44–48; see also *Mendillo* v. *Board of Education*, supra, 513 (*Berdon, J.*, concurring in part and dissenting in part) (reasoning that "[t]he distinction between the interests of children and those of other relatives is rational and easily applied" (internal quotation marks omitted)).

The majority argues that relying on the "concept of dependence" creates "a clear dividing line between those relationships for which we do and do not recognize a cause of action for loss of consortium . . . ." This argument implies that, if this court were to recognize a loss of filial consortium cause of action, it would open the door to expanding the loss of consortium cause of action to other family members, with no logical end point. And, if that is the case, at some point this court must say "no."

The fear of an ever-expanding loss of consortium cause of action is unfounded. This court has already concluded that the parent-child relationship clearly limits who can bring a loss of consortium cause of action. See *Campos* v. *Coleman*, supra, 319 Conn. 44–48. And the experience of other states shows that the majority's

L. L. *v.* Newell Brands, Inc.

concern is simply overstated. Of the numerous states that have recognized a loss of parental or filial consortium cause of action since Idaho first did in 1952; see *Hayward* v. *Yost*, 72 Idaho 415, 425, 242 P.2d 971 (1952); only New Mexico has allowed for nonparent family members to recover for a loss of consortium. See *Fernandez* v. *Walgreen Hastings Co.*, 126 N.M. 263, 273, 968 P.2d 774 (1998) (requiring child's grandmother to show that she acted as family caretaker and provided parental affection to child to recover for loss of consortium). In the twenty-six years since New Mexico first recognized the cause of action in *Fernandez*, no other state has extended nonspousal, familial consortium causes of action beyond the parent-child relationship. See, e.g., *HELG Administrative Services, LLC* v. *Dept. of Health*, 154 Haw. 228, 229, 234–35, 237, 549 P.3d 313 (2024); *Snearl* v. *Mercer*, 780 So. 2d 563, 591–92 (La. App.), writ denied, 794 So. 2d 800 (La. 2001), and writ denied, 794 So. 2d 801 (La. 2001); *North Pacific Ins. Co.* v. *Stucky*, 377 Mont. 25, 40, 338 P.3d 56 (2014); *Hern* v. *Safeco Ins. Co. of Illinois*, 329 Mont. 347, 361–63, 125 P.3d 597 (2005); *Rolf* v. *Tri State Motor Transit Co.*, 91 Ohio St. 3d 380, 381, 383, 745 N.E.2d 424 (2001); *Benda* v. *Roman Catholic Bishop of Salt Lake City*, 384 P.3d 207, 209, 212–13 (Utah 2016). If the experience of other states is not persuasive, then the majority need look no further than *Campos* to determine that this court has already identified a logical end point to loss of consortium claims: the parent-child relationship.[4]

As to the second factor, recognizing a cause of action for loss of filial consortium would not impose undue

---

[4] In the present case, Haier unpersuasively contends that a filial consortium claim would also exclude non-biological parental relationships. But nothing in this court's holding in *Campos* would compel this court to arbitrarily limit recovery to birth parents in a filial consortium cause of action. Rather, a filial consortium cause of action would make recovery available to *legal* parents, which encompasses biological and non-biological adoptive parents.

351 Conn. 262 FEBRUARY, 2025 289

L. L. *v.* Newell Brands, Inc.

societal costs, such as unreasonable increases in insurance premiums or litigation costs. See *Campos* v. *Coleman*, supra, 319 Conn. 47. To the extent recognizing a loss of filial consortium cause of action would impose undue societal costs, the same costs would certainly have arisen after we adopted loss of parental and spousal consortium causes of action. See id., 47–49, 57; *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 496. In the present case, the defendants have not identified any data to show that this court's prior recognition of consortium causes of action has created undue societal costs in Connecticut. Moreover, other states have recognized a statutory or common-law cause of action for loss of filial consortium for more than three decades, and at least twenty-five states presently recognize such an action.[5] The majority has not identified any undue

[5] The following statutes from fifteen jurisdictions allow for a loss of filial consortium cause of action arising out of the wrongful death of, and/or injury to, a child: Alaska Stat. § 09.15.010 (2022) (wrongful death or injury); Idaho Code Ann. § 5-311 (West 2023) (wrongful death only); Iowa Code Ann. § 613.15A (West 2018) (wrongful death or injury); Kan. Stat. Ann. § 60-1904 (1994) (wrongful death only); Ky. Rev. Stat. Ann. § 411.135 (LexisNexis 2005) (wrongful death only); Mass. Ann. Laws c. 231, § 85X (LexisNexis 2009) (serious injury); Neb. Rev. Stat. § 30-810 (2016) (wrongful death only); Okla. Stat. Ann. tit. 12, § 1055 (West 2015) (wrongful death only); Or. Rev. Stat. §§ 30.010 and 30.020 (2023) (wrongful death or injury); R.I. Gen. Laws § 9-1-41 (c) (2012) (injury); S.D. Codified Laws § 21-5-1 (2004) (wrongful death only); Tenn. Code. Ann. § 20-5-113 (2009) (wrongful death only); Vt. Stat. Ann. tit. 14, § 1492 (b) (Cum. Supp. 2024) (wrongful death only); Va. Code Ann. §§ 8.01-50 and 8.01-52 (2024) (wrongful death only); Wn. Rev. Code Ann. § 4.24.010 (West Cum. Supp. 2025) (wrongful death or injury).

In addition, ten jurisdictions recognize a common-law loss of filial consortium cause of action. See, e.g., *Reben* v. *Ely*, 146 Ariz. 309, 309, 705 P.2d 1360 (App. 1985); *United States* v. *Dempsey*, supra, 635 So. 2d 962–65; *Masaki* v. *General Motors Corp.*, 71 Haw. 1, 19, 22, 780 P.2d 566 (1989); *Snearl* v. *Mercer*, supra, 780 So. 2d 591–92; *Hern* v. *Safeco Ins. Co. of Illinois*, supra, 329 Mont. 361–63; *Fernandez* v. *Walgreen Hastings Co.*, supra, 126 N.M. 271–73; *Hopkins* v. *McBane*, 427 N.W.2d 85, 92 (N.D. 1988); *Gallimore* v. *Children's Hospital Medical Center*, supra, 67 Ohio St. 3d 246, 251–52; *Benda* v. *Roman Catholic Bishop of Salt Lake City*, supra, 384 P.3d 209, 212–13; *Shockley ex rel. Habush* v. *Prier*, 66 Wis. 2d 394, 401–404, 225 N.W.2d 495 (1975).

L. L. *v.* Newell Brands, Inc.

increased societal costs in any of these twenty-five states that would warrant concern by this court.

Although there is no evidence to suggest that recognizing a filial consortium cause of action would impose undue societal costs, as to the third *Mendillo* factor, we do know that such recognition would yield important societal benefits. Allowing compensation for the loss of filial consortium would enable a parent "to secure the therapy that will" help the parent "heal the wounds caused by his or her loss." *Mendillo* v. *Board of Education*, supra, 246 Conn. 479. It would enable a consortium parent to continue to provide care for their injured child. *Campos* v. *Coleman*, supra, 319 Conn. 43 (recognizing parents' care for their children as "critically important [service]"). Furthermore, because the parent-child relationship itself provides "value to society"; id., 46; providing greater protection to this relationship benefits all of society.

Recognizing a filial consortium cause of action would also further the purposes of the tort compensation system. See *Mendillo* v. *Board of Education*, supra, 246 Conn. 482 (identifying purposes of tort system to include "compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct"). The cause of action would provide compensation to innocent parents who suffer the loss of their child's consortium. And it would allocate the financial burden of that loss to responsible parties. To the extent the majority is concerned that recognizing a filial consortium cause of action would not further the purposes of the tort compensation system because it would provide no deterrence for wrongful conduct, I would disagree. Even if a filial consortium cause of action would not further deter wrongful conduct—which is doubtful, as there can be no greater incentive for profit-driven companies to create safer products and to avoid expo-

sure to financial lability—it would still further the other purposes of the tort compensation system.

As to the fourth factor, recognizing a cause of action for the loss of filial consortium would also not "create a significant risk of double recovery." Id., 489. "This precise argument was addressed and rejected in *Hopson*." Id., 509 (*Berdon, J.*, concurring in part and dissenting in part). It was again addressed and rejected in *Campos*. See *Campos* v. *Coleman*, supra, 319 Conn. 50–51. In *Campos* and *Hopson*, this court acknowledged that some risk of double recovery may exist. See id.; *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 492–94. The concern was that an injured party might recover for their own injuries and the inability to provide services to their spouse or child. See, e.g., *Campos* v. *Coleman*, supra, 50–51; see also, e.g., *Mendillo* v. *Board of Education*, supra, 246 Conn. 489. In both *Campos* and *Hopson*, however, this court concluded that the risk of double recovery was not an insurmountable barrier to recognizing a loss of spousal or parental consortium cause of action. *Campos* v. *Coleman*, supra, 50–51; *Hopson* v. *St. Mary's Hospital*, supra, 492–94. Instead, this court addressed the risk of double recovery by requiring the injured party and the consortium spouse or child to join their claims in the same proceeding. *Campos* v. *Coleman*, supra, 50–51; *Hopson* v. *St. Mary's Hospital*, supra, 494. We also required trial courts to instruct juries that an injured party's services are recoverable only by the spouse or the minor child. *Campos* v. *Coleman*, supra, 50–51; *Hopson* v. *St. Mary's Hospital*, supra, 494. This court can and should impose these same requirements in a filial consortium cause of action.

In the present case, Haier argues that recognizing a loss of filial consortium cause of action would create a risk of double recovery distinct from the risk of double recovery that we described in *Campos*. Previously, this

L. L. *v.* Newell Brands, Inc.

court was concerned that an injured parent might recover for their own injuries and the inability to provide services to their child. See, e.g., *Campos* v. *Coleman*, supra, 319 Conn. 50–51; see also, e.g., *Mendillo* v. *Board of Education*, supra, 246 Conn. 489. Haier claims that this court should now be concerned that, in some situations, a risk exists that a party might doubly recover for a loss of *intangible aspects of a relationship* because juries will not be able to distinguish between the different parties' intangible losses. That is, in a situation in which a child and their parent are seriously injured, they might both recover for a loss of consortium. This concern is misplaced.

A loss of filial consortium claim would compensate only for the parent's loss of consortium when their child is injured. See, e.g., *Gallimore* v. *Children's Hospital Medical Center*, supra, 67 Ohio St. 3d 253. A child cannot also recover for their parent's loss of consortium. See, e.g., id. To be clear, both the parent and the child have an interest in their relationship with the other. Accordingly, both the parent and the child could theoretically suffer a compensable injury for a loss of that relationship if both parties are seriously injured. But, in many situations, either the parent or the child, but not both, will be seriously injured. Moreover, a theoretical risk that might exist in *some* situations should not bar recovery in *all*. There is no reason to think that proper jury instructions and a requirement that parents and children join their claims are inadequate to mitigate any risk that might exist.

To the extent the majority shares the defendants' concern that, even with clear jury instructions, a jury will still make an award that arbitrarily increases a tortfeasor's liability, I am not persuaded. As this court has recognized, "[t]he difficulty [in] assessing damages for loss of consortium is not a proper reason for denying the existence of such a cause of action inasmuch as

351 Conn. 262        FEBRUARY, 2025              293

L. L. *v.* Newell Brands, Inc.

the logic of [that reasoning] would also hold a jury
incompetent to award damages for pain and suffering.''
(Internal quotation marks omitted.) *Hopson* v. *St. Mary's
Hospital*, supra, 176 Conn. 493. Further, the concern
that juries are not able to follow clear instructions runs
counter to this court's presumption that, in the absence
of evidence to the contrary, juries do follow instruc-
tions. See, e.g., *Hurley* v. *Heart Physicians*, *P.C.*, 298
Conn. 371, 402, 3 A.3d 892 (2010). The fear that recogni-
tion of another loss of consortium cause of action would
increase sympathy awards by juries amounts to a "fear
that some cases will be decided badly.'' (Internal quota-
tion marks omitted.) *Reben* v. *Ely*, 146 Ariz. 309, 313,
705 P.2d 1360 (App. 1985). I believe that it is "better to
adopt a rule [that] will enable courts to strive for justice
in all cases rather than to rely [on] one [that] will ensure
injustice to many.'' (Internal quotation marks omitted.)
Id.

Finally, as to the fifth *Mendillo* factor, recognizing a
cause of action for the loss of filial consortium would
not run counter to the weight of judicial authority.
Twenty-five jurisdictions have recognized a cause of
action that allows recovery for the loss of filial consor-
tium.[6] See footnote 5 of this opinion. The reporters'

---

[6] This number includes the fifteen jurisdictions that allow for a statutory
loss of filial consortium cause of action arising out of the wrongful death
of, and/or injury to, a child and the ten jurisdictions that allow for a common-
law loss of filial consortium claim. See footnote 5 of this opinion. The
number also includes jurisdictions that recognize only a wrongful death of
a child cause of action but no cause of action for nonfatal injuries to a
child. See id. However, there is some conceptual "intersection'' between
wrongful death claims and the loss of consortium claims. Restatement
(Third), Torts, Concluding Provisions § 48 A, comment (g), p. 274 (Tentative
Draft No. 1, 2022). Notably, of the states that recognize a common-law loss
of filial consortium cause of action, most also recognize a common-law loss
of parental consortium cause of action. See, e.g., *Villareal* v. *State*, *Dept.
of Transportation*, 160 Ariz. 474, 477, 774 P.2d 213 (1989); *HELG Adminis-
trative Services*, *LLC* v. *Dept. of Health*, supra, 154 Haw. 229, 234–35, 237;
*North Pacific Ins. Co.* v. *Stucky*, supra, 377 Mont. 31–37, 40; *State Farm
Mutual Automobile Ins. Co.* v. *Luebbers*, 138 N.M. 289, 299–300, 119 P.3d
169 (App. 2005), writ quashed, 140 N.M. 675, 146 P.3d 810 (2006); *Gallimore*

L. L. *v.* Newell Brands, Inc.

note to comment (b) to § 48 B in the first tentative draft of the Restatement (Third) of Torts explains that "[t]he trend is toward recognition of such claims, with the vast majority occurring after 1987." Restatement (Third), Torts, Concluding Provisions § 48 B, reporters' note to comment (b), p. 303 (Tentative Draft No. 1, 2022). The majority emphasizes that fourteen jurisdictions have declined to recognize a common-law filial consortium cause of action; see footnote 9 of the majority opinion and accompanying text; and that eighteen jurisdictions recognize only a common-law loss of services cause of action. See footnote 10 of the majority opinion and accompanying text. I agree that some of these jurisdictions allow recovery for loss of services but not for loss of relationship. See, e.g., *Smith* v. *Richardson*, 277 Ala. 389, 394, 171 So. 2d 96 (1965); *Earl* v. *Mosler Safe Co.*, 291 Ark. 276, 279, 724 S.W.2d 174 (1987); *Forte* v. *Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 801 n.8, 802– 803 (Ind. 2001); *Michaels* v. *Nemethvargo*, 82 Md. App. 294, 296, 298, 300, 571 A.2d 850 (1990); *Father A* v. *Moran*, 469 N.W.2d 503, 506 (Minn. App. 1991); *Connelly* v. *Omaha*, 284 Neb. 131, 155, 157, 816 N.W.2d 742 (2012); *Gilbert ex rel. Gilbert* v. *Stanton Brewery, Inc.*, 295 N.Y. 270, 272–73, 67 N.E.2d 155 (1946); *Bolkhir* v. *North Carolina State University*, 321 N.C. 706, 713, 365 S.E.2d 898 (1988); *Moses* v. *Akers*, 203 Va. 130, 132, 122 S.E.2d 864 (1961); see also, e.g., *J.V. ex rel. Valdez* v. *Macy's, Inc.*, Docket No. Civ. No. 13-5957 (KSH) (CLW), 2014 WL 4896423, *4 (D.N.J. September 30, 2014) (applying New Jersey law). But this court has recognized a loss of services as one component of a loss of consortium claim. See, e.g., *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 492. Other of these jurisdictions protect a similar interest by recognizing a parent's wrongful death

v. *Children's Hospital Medical Center*, supra, 67 Ohio St. 3d 246, 251–52, 254–55; *Theama ex rel. Bichler* v. *Kenosha*, 117 Wis. 2d 508, 522, 527–28, 344 N.W.2d 513 (1984).

L. L. *v.* Newell Brands, Inc.

cause of action when their child dies, even though the parent cannot recover when the child is nonfatally injured. See, e.g., Kan. Stat. Ann. § 60-1904 (1994); Ky. Rev. Stat. Ann. § 411.135 (LexisNexis 2005); Neb. Rev. Stat. § 30-810 (2016); S.D. Codified Laws § 21-5-1 (2004).

Regardless of how I might differently categorize or analyze these cases from the majority, this court does "not decide the public policy of this state based [on] the numbers game." *Mendillo* v. *Board of Education*, supra, 246 Conn. 506 (*Berdon, J.*, concurring in part and dissenting in part). Rather, this court must decide whether to recognize a loss of filial consortium cause of action "based [on] what we deem to be in the best interests of justice and of the citizens of [Connecticut] . . . at the time the question is presented to us." (Internal quotation marks omitted.) Id., 506–507 (*Berdon, J.*, concurring in part and dissenting in part), quoting *Hay* v. *Medical Center Hospital of Vermont*, 145 Vt. 533, 545, 496 A.2d 939 (1985). Because the overall balance of the public policy factors weighs in favor of recognition, I would recognize a loss of filial consortium cause of action.

III

The majority's decision not to engage in a thorough policy analysis also represents a departure from a quintessential function of this court: to determine whether to recognize a common-law cause of action. This court routinely "weigh[s] . . . public policies" to determine if a common-law cause of action exists. *Campos* v. *Coleman*, supra, 319 Conn. 40 n.5; see id. ("[s]ee, e.g., [*Mueller* v. *Tepler*, supra, 312 Conn.] 649–58 (recognizing as matter of public policy that member of same-sex couple who would have been married but for legal bar on such marriages can bring loss of consortium claim); *Craig* v. *Driscoll*, [supra, 262 Conn. 338–40] (recognizing that purveyor who negligently serves liquor to adult

L. L. *v.* Newell Brands, Inc.

patron who, as result of his intoxication, injures another, can be proximate cause of such injuries); *Jaworski* v. *Kiernan*, 241 Conn. 399, 412, 696 A.2d 332 (1997) ('[A]s a matter of policy, it is appropriate to adopt a standard of care imposing on the defendant, a participant in a team contact sport, a legal duty to refrain from reckless or intentional conduct. Proof of mere negligence is insufficient to create liability.'); *Clohessy* v. *Bachelor*, 237 Conn. 31, 49, 675 A.2d 852 (1996) ('[w]e . . . conclude, on the basis of sound public policy and principles of reasonable foreseeability, that a plaintiff should be allowed to recover, within certain limitations, for emotional distress as a result of harm done to a third party')'').

To abandon this role is the functional equivalent of ceding this court's inherent authority to the legislature; this court has never deferred to the legislature when determining whether to recognize a common-law loss of consortium cause of action. See, e.g., *Campos* v. *Coleman*, supra, 319 Conn. 37–38, 57 (recognizing parental consortium cause of action); *Mueller* v. *Tepler*, supra, 312 Conn. 633–35, 646, 661 (extending spousal consortium cause of action to nonmarried partners who would have been married or in civil union when underlying tortious conduct occurred if not for fact that they were barred from doing so); *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 494–96 (recognizing loss of spousal consortium cause of action). Even in *Mendillo* v. *Board of Education*, supra, 246 Conn. 456, in which this court declined to recognize a loss of parental consortium cause of action; see id., 461, 495–96; neither the majority opinion nor the concurring and dissenting opinion questioned that this court, not the legislature, should make that determination. See id., 480, 485–87; id., 507 and n.13 (*Berdon, J.*, concurring in part and dissenting in part). Instead, in *Mendillo*, the majority of this court reasoned that it can and should engage in a "special policy inquiry" pursuant to its common-law authority.

L. L. *v.* Newell Brands, Inc.

Id., 480. This court "acknowledge[d] that as in any case that involves the question of whether our public policy, as a matter of common law, should recognize a new cause of action, the ultimate decision comes down to a matter of [judicial] judgment in balancing the competing interests involved." Id., 495. There are many circumstances in which this court has appropriately left to the legislature questions better suited to its judgment and expertise. See, e.g., *Commissioner of Mental Health & Addiction Services* v. *Freedom of Information Commission*, 347 Conn. 675, 707, 299 A.3d 197 (2023). This is not one of those circumstances. To defer to the legislature here would abdicate this court's common-law authority because "[t]he issue of whether to recognize a common-law cause of action in negligence is a matter of policy *for* [*this*] *court* to determine based on the changing attitudes and needs of society." (Emphasis added.) *Craig* v. *Driscoll*, supra, 262 Conn. 339.

Indeed, I have not found a single case in which this court has deferred to the legislature when considering whether to recognize a common-law cause of action. See generally D. Krisch & M. Taylor, Encyclopedia of Connecticut Causes of Action (2023) pp. 1–139 (listing and describing more than 100 recognized common-law causes of action). Of course, this court has *declined* to recognize many common-law causes of action or to expand existing common-law causes of action. See, e.g., *Cenatiempo* v. *Bank of America, N.A.*, 333 Conn. 769, 806, 219 A.3d 767 (2019); *Sepega* v. *DeLaura*, 326 Conn. 788, 789, 167 A.3d 916 (2017); *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 227–28, 235, 116 A.3d 297 (2015); *Cweklinsky* v. *Mobil Chemical Co.*, 267 Conn. 210, 212–13, 216, 837 A.2d 759 (2004); *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 693–94, 697, 802 A.2d 731 (2002); *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 330–31, 627 A.2d 909 (1993). But it does not change the fact that the decision-making authority

L. L. *v.* Newell Brands, Inc.

rests with this court and not the legislature. We regularly weigh policy considerations and, on that basis, determine whether to recognize a common-law cause of action. That is a quintessential function of this court. The majority's failure to engage in a policy analysis represents a dramatic departure from this court's exercise of its long established common-law authority.

For the foregoing reasons, I respectfully dissent.